**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CARRON DRIVE APARTMENTS LP : | |
|  c/o JPRowley Law PLLC : | |
|  1701 Pennsylvania Avenue, N.W. : | |
|  Suite 200 : | |
|  Washington, D.C.  20006 : | |
| : | |
| and : | |
| : | |
| STEPHEN MILLER : | |
|  c/o JPRowley Law PLLC : | |
|  1701 Pennsylvania Avenue, N.W. : | Civil Action No. 1:22cv641-CJN |
|  Suite 200 : | |
|  Washington, D.C.  20006 : | |
| : | |
| *Plaintiffs,* : | |
|               v. : | |
| : | |
| UNITED STATES HOUSE OF REPRESENTATIVES : | |
| SELECT COMMITTEE TO INVESTIGATE : | |
| THE JANUARY 6TH ATTACK ON THE : | |
| UNITED STATES CAPITOL : | |
| Longworth House Office Building : | |
| Washington, D.C.  20515 : | |
| : | |
| BENNIE G. THOMPSON, in his official capacity as : | |
| Chairman of the House Select Committee to : | |
| Investigate the January 6th Attack : | |
| on the United States Capitol, : | |
| Longworth House Office Building : | |
| Washington, D.C.  20515 : | |
| : | |
|                  *Defendants.* : | |

**AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## NATURE OF DISPUTE

1.   This action challenges the propriety of a congressional subpoena (the "Subpoena") the United States House Select Committee to Investigate the January 6th Attack on the U.S. Capitol (the "Select Committee") issued to T-Mobile on February 22, 2022. The Subpoena sought records from a "family plan" phone account ("Family Plan Account") of Plaintiff Carron Drive Apartments LP ("Carron Drive"). Plaintiff Stephen Miller ("Mr. Miller") is a user of a cell phone number assigned by T-Mobile to the Carron Drive Family Plan Account.

2.   Prior to issuing the Subpoena, on November 5, 2021, the Select Committee also served a subpoena on Mr. Miller (the "Miller Subpoena") to compel testimony and documents from him, including documents and communications relating to the 2020 Presidential election, the certification of the election, the January 6 attack on the Capitol, and pre and post January 6 events. Mr. Miller produced a multitude of documents and data pursuant to the Miller Subpoena and, on April 14, 2022, he sat for a day-long deposition by the staff and members of the Select Committee.

3.   As would be expected, because Mr. Miller is a former, longtime close senior advisor to former President Donald J. Trump, the Miller Subpoena raised many significant weighty constitutional and legal issues, including separation of powers and executive privilege concerns, the latter of which brought to the fore bona fide questions regarding whether and in what circumstances a former President may prevent the disclosure of privileged records from his tenure in office, in the face of the incumbent President's determination to waive the privilege.

4.   Mindful of these issues, counsel for Mr. Miller engaged in good-faith dialogue with counsel for the Select Committee, the White House Counsel's Office, and representatives of the former President to determine how best to navigate and resolve the competing interests and legal positions of the parties.

2

5.    After such consultation and negotiation, Mr. Miller agreed to produce hundreds of pages of documents to the Select Committee and to sit for an all-day sworn deposition. Among the documents produced by Mr. Miller to the Select Committee were the content and associated phone numbers and "envelope data" (*i.e.*, time-and-date stamps of transmission) of all responsive text message communications that could be retrieved from Mr. Miller's personal cell phone number assigned by T-Mobile to the Family Plan Account, following a thorough search of his electronic devices with the assistance of a forensic expert hired by his counsel.

6.    Prior to his deposition on April 14, 2022, the Select Committee therefore possessed records and information from the National Archives, records and information from other Select Committee witnesses, as well as records and information from Mr. Miller himself, to include all of his emails, communications, text messages, and other responsive documents.

7.    At his deposition, the Select Committee staff examined Mr. Miller's recollection of his documents and communications related to the matters under investigation by the Select Committee extensively, over the course of approximately eight hours.

8.    Apparently still wanting, the Select Committee—months after Mr. Miller's document production and eight-hour deposition which the Select Committee has never sought to reopen or continue—now wishes to engage in a fishing expedition presumably in search of the mere possibility of potentially helpful information from T-Mobile, without identifying what information they hope to uncover, or specifically calling into question the veracity of his sworn deposition testimony and document production.

9.    Instead, the Select Committee relies on months-old New York Times articles and television appearances that have all been overtaken by events, and the Select Committee purports to justify the Subpoena on the well-worn assertion that "Mr. Miller . . . played a key

role in setting the stage for the January 6th attack." (Doc. 12.)

10.  The Subpoena serves no legitimate purpose. Rather, as the Select Committee's latest filing should bring into sharp focus, it seeks to enforce the Subpoena just because. Without more, at this particular juncture, that is insufficient to justify compelling T-Mobile to produce the personal and expansive information sought by the Subpoena.

11.  Mr. Miller produced all responsive documents and actual copies of all relevant text messages and their call data. During his deposition, the Select Committee questioned Mr. Miller extensively, exhausting his memory and recollection of all phone calls and communications related to the matters under investigation. The Select Committee's latest filing omits these intervening events, and instead falls back on media reports to attempt to establish Mr. Miller's relevance and hence the need for the Subpoena "to determin[e] the root causes of the violent January 6th attack on Congress . . . and determine the extent of the efforts by Mr. Trump and his allies to overturn the election results and interfere with the peaceful transfer of power." (Doc. 12.)

12.  The reality is, however, that counsel for the Select Committee already received all responsive documents and questioned Mr. Miller about these precise topics, rendering the need for third party call data records moot. Moreover, as the Select Committee knows from Mr. Miller's deposition, during the period from November 19, 2021, to January 5, 2022, because of the medical conditions of his wife and new-born daughter, he was largely uninvolved in his work as senior advisor to the President.

13.  Whatever legislative purpose the Select Committee may claim for its investigation, it has been served and is not further served by providing the Select Committee with the names and numbers of Mr. Miller's family members, doctors, colleagues, members of the media, or

friends, whose call history and information would be contained in a subpoena response.

14. Thus, as is their right under Rule 15 of the Federal Rules of Civil Procedure, Plaintiffs hereby amend their Complaint to include a recitation of the events that have occurred in the intervening months since the Subpoena was served and this action was filed. Those facts only strengthen Plaintiffs' claims for relief, as any new information obtained via the Subpoena to T-Mobile will—almost by definition—be irrelevant or unrelated to the matter under investigation, given the extent of the documents and testimony that have already been provided to the Select Committee by Mr. Miller.

## INTRODUCTION

1.15.  Plaintiff Carron Drive Apartments LP ("Carron Drive") is a California Limited Partnership formed in August 1997. Carron Drive is the subscriber for a T-Mobile "family plan" phone account that is used by Michael D. Miller, Miriam G. Miller and their children, including Plaintiff Stephen Miller ("Family Plan Account").. Several of the Family Plan Account Plan members are practicing attorneys who use their phones for privileged call and text communications with clients and to otherwise conduct their law practices.

2.16.  Plaintiff Stephen Miller ("Mr. Miller") is a United States citizen and a former Senior Advisor to President Donald J. Trump. Mr. Miller is, and has been, the user of a cell phone number assigned by T-Mobile (and previously by Sprint Communications) to the Carron Drive's Family Plan Account for at least the last ten years.

3.17.  By letter dated February 28, 2022, T-Mobile notified Carron Drive that T-Mobile had been served with a subpoena ("the Subpoena") issued by the U.S. House Select Committee to Investigate the January 6th Attack on the U.S. Capitol (the "Select Committee").. The Subpoena calls for the production by T-Mobile of "Subscriber Information" and "Connection Records and Records of Session Times and Durations" from November 1, 2020, to January 31, 2021, for the

phone number assigned to Mr. Miller's cell phone.

4.18. T-Mobile's letter to Carron Drive states that it intends to comply with the Subpoena and produce records to the Select Committee on March 11, 2022, unless it is provided with documentation no later than March 9, 2022, confirming that Carron Drive has filed a motion to quash or other judicial process seeking to block compliance with the Subpoena.

5.19. Carron Drive is a real estate company based in California that had no relationship whatsoever with the events of January 6th or any other matter that is within the scope of House Resolution 503 ("H. Res. 503"). That Resolution created the Select Committee and sets forth the matters within the scope of the investigation the Committee is currently conducting.

6.20. —Mr. Miller used the phone number assigned to his Family Plan Account for personal and business communications during the period indicated by the Subpoena. During that period, Mr. Miller also was required to use his cellphone to consult with doctors and other healthcare professionals regarding the serious medical complications that his wife and baby daughter experienced before and after his daughter was born on November 19, 2020. These medical consultations involved sensitive, private matters that are entirely irrelevant to the work of the Select Committee.

21. The Select Committee also served Mr. Miller with a subpoena for testimony and documents, a true and correct copy of which is attached as Exhibit A to this Amended Complaint.

22. After extensive negotiations with the interested parties, Mr. Miller, through counsel, produced all documents responsive to the Select Committee's subpoena, which included a spreadsheet of all responsive test messages and surrounding data that were forensically retrieved from Mr. Miller's personal cell phone number assigned by T-Mobile to the Family Plan Account

that is the subject of the Subpoena. This spreadsheet included, among other things, the sender and recipient phone numbers, time-and-date stamps for each text message sent, as well as the content for each text message produced.

23. On April 14, 2022, Mr. Miller appeared before the Select Committee to answer questions under oath. During his approximately eight-hour deposition, Mr. Miller answered numerous questions about the time, date, frequency, duration, and content of his phone calls, text messages, conversations, and communications regarding the matters of interest to the Select Committee.

7.24.  Carron Drive and Mr. Miller have filed this Amended Complaint to obtain this Court's protection from the Select Committee's intrusive and unjustified attempt to violate the privacy rights that Mr. Miller and, potentially, the other members of the Miller family have under the Family Plan Account.

8.25.  As set forth below, the Select Committee lacks the authority to obtain the records sought by the Subpoena. The Subpoena is overly broad and seeks information that is unrelated to the purposes whereby Congress established the Select Committee as set forth in H. Res. 503. Moreover, the Subpoena violates Mr. Miller's protections under the First and Fourth Amendments to the United States Constitution, as well as federal law.

**PARTIES**

9.26.  Plaintiff Stephen Miller is a resident of the District of Columbia. He served as Senior Advisor to President Donald J. Trump from January 20, 2017, through January 20, 2021.

10.27.        Defendant Select Committee is a committee created by H. Res. 503, which was passed by the U.S. House of Representatives on June 30, 2021.

11.28. Defendant Bennie G. Thompson is a Member of the U.S. House of Representatives and the Chairman of the Select Committee. The Subpoena was issued under his

7

authority as Chairman of the Select Committee.

**JURISDICTION AND VENUE**

~~12.~~29. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the Constitution of the United States, as well as 28 U.S.C. §§ 2201-02, which provides for declaratory relief.

~~13.~~30.        This Court also has subject matter jurisdiction under the Stored Communications Act, 18 U.S.C. §§ 2701, *et seq.*

~~14.~~31.        This Court has personal jurisdiction over Chairman Thompson because he presides over the Select Committee and authorized issuance of the Subpoena to T-Mobile from the Select Committee's offices in Washington, D.C.

~~15.~~32.        This Court has personal jurisdiction over the Select Committee because it is located, and functions, in Washington, D.C.

~~16.~~33.        Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to ~~Plaintiff's~~Plaintiffs' claims occurred in Washington, D.C.

**RELEVANT FACTS**

~~17.~~34.        On June 30, 2021, the United States House of Representatives adopted H. Res. 503 which created the Select Committee.[1] The Resolution, in relevant part, authorized the Select Committee:

> To investigate and report upon the facts, circumstances, and causes relating to the January 6, 2021, domestic terrorist attack upon the United States Capitol Complex ~~. . .~~ . . . and relating to the interference with the peaceful transfer of power, including facts and causes relating to the preparedness and response [of various law enforcement agencies], as well as the influencing factors that fomented such an attack on American representative democracy while engaged in a constitutional process.

---

[1] H. Res. 503, Establishing the Select Committee to Investigate the January 6th Attack on the United States Capitol, 117th Congress ~~(,~~ *available at* https://www.congress.gov/bill/117th-congress/house-resolution/503/text (last visited Sept. 2, 2022).

8

H. Res. 503 also provided that the Select Committee may "issue subpoenas pursuant to clause 2(m)" of Rule XI of the Rules of the House of Representatives, which authorizes subpoenas "to require . . . the production of such books, records, correspondence memoranda, papers, and documents as it considers necessary."[2]

18.35.     By its terms, the Committee's authorization to issue subpoenas is limited to the matters set forth in H. Res. 503.

19.36.     Despite the limitations imposed by H. Res. 503, on February 22, 2022, the Select Committee issued the Subpoena to T-Mobile requiring that subscriber Carron Drive provide T-Mobile with the following information related to Mr. Miller's cellular telephone number for the three-month period from November 1, 2020, through January 31, 2021:

Subscriber Information: All subscriber information for the Phone Number, including:

   a. Name, subscriber name, physical address, billing address, e-mail address, and any other address and contact information;

   b.  All authorized users on the associated account;

   c. All phone numbers associated with the account;

   d. Length of service (including start date) and types of service utilized;

   e. Telephone or instrument numbers (including MAC addresses), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEI"), Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identifiers ("IMEI") associated with the accounts;

---

[2] Rules of the House of Representatives, 117th Congress, adopted ~~February~~Feb. 2, 2021 ~~(~~, *available at* https://rules.house.gov/sites/democrats.rules.house.gov/files/117-House-Rules-Clerk.pdf (last visited Sept. 2, 2022).

f.  Activation date and termination date of each device associated with the account;

g.  Any and all number and/or account number changes prior to and after the account was activated;

h.  Other subscriber numbers or identities (including temporarily assigned network addresses and registration Internet Protocol ("IP") addresses); and

<u>Connection Records and Records of Session Times and Durations</u>: All call, message (SMS & MMS), Internet Protocol ("IP"), and data-connection detail records associated with Phone Numbers, including all phone numbers, IP addresses, or devices that communication with the Phone Number via delivered and undelivered inbound, outbound, and routed calls, messages, voicemail, and data connections.

20.37.    The records sought by the Select Committee include those evidencing sensitive, personal communications that Mr. Miller had with medical professionals and family regarding his wife and new-born daughter. Prior to filing thisthe original Complaint, the undersigned counsel attempted to obtain confirmation from the Select Committee that the Subpoena does not seek the records pertaining to communication content for Mr. Miller's phone number or require the production of records of other Family Plan Account users. The Committee has acknowledged counsel's request but hasdid not substantively respondedrespond in time for Plaintiffs to incorporate the Committee's position before the March 9, 2022, deadline for T-Mobile's production of records to the Committee.

21.38.    The Subpoena follows an August 30, 2021, letter from the Select Committee to T-Mobile and as many as 34 other telecommunications and social media companies, to preserve customer information for the period April 1, 2020, through January 31,

2021.[3] The Committee has not publicly released the names of the account holders that were the subject of the preservation letters. The preservation requests included location data and the "[c]ontent of communications, including all emails, voice messages, text or SMS/MMS messages, videos, photographs, direct messages, address books, contact lists, and other files or other data communications stored in or sent from the account . . . ."[.]"

39.    In the Motion to Dismiss it filed in this matter, the Select Committee has now disavowed that it is seeking content of communication or information on subscribers other than Mr. Miller in particular, among other concessions. (Doc. 12.) Yet, upon information and belief, the Select Committee has issued no revised subpoena, much less attached or proffered a new subpoena as modified.

## REASONS WHY THE SUBPOENA IS INVALID

22.40.        Plaintiffs request that this Court quash the Subpoena, granting all such other relief sought in the Prayer for Relief herein, for the reasons set forth below.

### A. The Subpoena is Overly Broad and Seeks Information that is Unrelated to the Select Committee's Investigation

23.41. Plaintiffs do not dispute the legitimacy of the Select Committee's investigation into the facts and circumstances surrounding the events at the United States Capitol on January 6, 2021. They acknowledge that the U.S. Court of Appeals for the District of Columbia Circuit recently affirmed the Committee's legitimate "legislative purpose" in *Trump v. Thompson, et al.*, D.C. Cir., Case No 21-5254 (December 9, 2021).[4] There are important differences between

---

[3] Mr. Miller learned of the August 30, 2021, letters from the media and assumes that he and Carron Drive were included in the preservation requests because of the Committee's issuance of the Subpoena to T-Mobile.

[4] The D.C. Circuit affirmed this Court's the district court's decision in *Donald J. Trump v. Bennie G. Thompson* (Civil Action No. 21-cv-2769 (TSC)).

that case and the present controversy.

24.42. In *Trump*, the D.C. Circuit considered whether a former President could prevent the disclosure of official records by asserting executive privilege while the sitting President declined to assert that privilege over the records at issue. In that matter, the Select Committee and the sitting President agreed that Congress had "established that the information sought is vital to its legislative interests and the protection of the Capitol and its grounds," and the D.C. Circuit determined that the Select Committee "has also demonstrated a sound factual predicate for requesting" the former President's documents. *Id.* at 37, 42. The D.C. Circuit further noted that the former President brought suit "solely in his 'official capacity' as the '45th President of the United States'" and "does not assert that disclosure of the documents . . . would harm any personal interests in privacy or confidentiality." *Id.* at 47. None of those factors is present here.

25.43. It is well established that ~~Congressional~~congressional subpoena authority is not unlimited. A subpoena "is valid only if it is related to, and in furtherance of, a legitimate task of the Congress." *Trump v. Mazars*, 140 S. Ct. 2019, 2031 (2020) (remanding the D.C. Circuit's upholding of congressional subpoenas for President Trump's personal financial records to consider whether the information was available through other means, whether the subpoenas were sufficiently narrow, whether the subpoenas furthered a legitimate government interest, and the burden hat compliance would place on the President) quoting *Watkins v. United States*, 354 U.S. 178 (1957) (internal quotations omitted) (reversing a Contempt of Congress conviction for refusing to answer questions about knowledge of Communist Party members). "Congress may not issue a subpoena for the purpose of law enforcement because those powers are assigned under our Constitution to the Executive and the Judiciary." *Id.* quoting *Quinn v. United States*,

349 U.S. 155, 161 (1955) (internal quotations omitted) (similar to *Watkins*). "Congress has no general power to inquire into private affairs and compel disclosures." *Id.* quoting *McGrain v. Daugherty*, 273 U.S. 135, 179 (1927) (internal quotations omitted) (reversing a District Court order discharging from custody a subpoenaed witness who had failed to appear before a Senate committee). "There is no congressional power to expose for the sake of exposure." *Id.* quoting *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 506 (1975) (internal quotations omitted) (upholding a Senate subcommittee's subpoena to the bank of an organization in connection with its inquiry into whether the organization was harmful to the morale of the United States armed forces).

44.    Whatever legitimate argument the Select Committee may have once had for T-Mobile records no longer exists in light of Mr. Miller's own production of phone data, documents, and testimony—indeed, a quintessential example of the "alternative means" for information that *Mazars* mandates courts to consider in evaluating a congressional subpoena.

~~26.~~45. The Subpoena is not "related to, and in furtherance of, a legitimate task of the Congress" and should be quashed.

~~27.~~46. The Subpoena seeks subscriber information and records of all telephone calls and text messages from Mr. Miller's personal cellular number for the period from November 1, 2020, through January 31, 2021. Because Mr. Miller's phone number is included with other numbers assigned by T-Mobile to the Family Plan Account, in the absence of explicit instructions from the Committee, it is possible that T-Mobile may respond to the Subpoena by producing data for other numbers assigned to the Family Plan Account. The undersigned counsel requested clarification from the Select Committee but as indicated, that clarification was not forthcoming by the deadline established by T-Mobile's notice to Carron Drive. —At a minimum,

given the Select Committee's current representations, the exclusion of subscriber information unrelated to Mr. Miller's number only, among other concessions, must be made explicit to T-Mobile if this Court does not quash the Subpoena in its entirety.

28.47. The Subpoena for records of private communications is overly broad and calls for the production of information that is unrelated to the purposes of the Select Committee's investigation. Indeed, the Select Committee already has all the relevant information that it can obtain via Mr. Miller's cooperation and deposition testimony.

29.48. During the period referenced in the Subpoena, Mr. Miller was engaged in constitutionally protected activity, as well as sensitive, personal communications with medical professionals concerning the health and well-being of his wife and new-born daughter. The Select Committee cannot demonstrate that the records it is seeking from T-Mobile would further its legislative mission, nor can it show that Mr. Miller's personal and business communications for more than two months prior to January 6, 2021, and nearly a month after that date, are relevant to its authorized purpose.

**B.**  **The Subpoena Violates Mr. Miller's Protections Under the First Amendment of the U.S. Constitution**

30.49.     By seeking information about Mr. Miller's personal and professional communications, Chairman Thompson and the Select Committee are improperly attempting to obtain information about Mr. Miller's free speech and association activities that are protected by the First Amendment to the U.S. Constitution. Worse, the Chairman and the Select Committeethey are misusing their authority to investigate political adversaries, painting their opposition with a broad brush as insurrectionists and domestic terrorists. The Select Committee cannot demonstrate a compelling justification that would justify this intrusion. *See e.g., NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958); *Gibson v. Florida Legislative*

14

*Investigation Committee*, 372 U.S. 539 (1963).

~~31.~~50.        Mr. Miller's cellular telephone and text message "call-detail" records are the modern-day equivalent of a membership list in that, in addition to disclosing information about personal communications, may provide records of calls and messaging with other senior Trump campaign officials. It is no secret that the Select Committee includes political adversaries[5] of former President Donald J. Trump and, in the absence of a legitimate purpose, compelling the production of Mr. Miller's records may improperly disclose information to persons who are interested in merely making partisan points or harassing Mr. Miller.

~~32.~~51.        Mr. Miller's First Amendment protections outweigh any interest the Select Committee may have in obtaining three months of his cellular records from T-Mobile. He takes no issue with the Committee's investigation of the attack on the Capitol, as well as the circumstances surrounding that disturbing event. However, there are no facts that show that Mr. Miller had any role in what happened there or otherwise engaged in any unlawful efforts to interfere with the peaceful transfer of power to the Biden administration. Absent such a showing, the Committee lacks a compelling interest, or any interest, in obtaining records that contain information about constitutionally protected activities, let alone Mr. Miller's unrelated private and personal communications.

**C.  The Subpoena Violates Mr. Miller's Protections Under the Fourth Amendment of the United States Constitution**

---

[5] *See, e.g.,* Barbara Sprunt, *Here are the 9 Lawmakers Investigating the Jan. 6 Capitol Attack*, National Public Radio, ~~July~~Jul. 27, 2021 ~~(,~~ *available at* https://www.npr.org/2021/07/27/1020713409/here-are-the-9-lawmakers-investigating-the-jan-6-capitol-attack (last visited Sept. 2, 2022); Melanie Zanona *et al.*, *Liz Cheney and Adam Kinzinger prepare for blockbuster hearing amid attacks from their own party*, CNN, ~~July~~Jul. 27, 2021 ~~(~~*available at* https://edition.cnn.com/2021/07/26/politics/liz-cheney-adam-kinzinger-republican-attacks/index.html (last visited Sept. 2, 2022).

33.52.        The Subpoena also constitutes an unreasonable search and violates Mr. Miller's right to be secure in his person, papers, and effects under the Fourth Amendment of the United States Constitution. Where an individual has a reasonable expectation of privacy, "official intrusion into that private sphere generally qualifies as a search and requires a warrant supported by probable cause." *Carpenter v. United States*, 138 S. Ct. 2206, 2221 (2018) citing *Smith v. Maryland*, 442 U.S. 735, 740 (1979). In *Carpenter*, the U.S. Supreme Court held that the government must obtain a warrant to obtain an individual's cell-site location information. In so doing, the Court declined to extend the reasoning of its earlier decisions in *Smith* and *United States v. Miller*, 425 U.S. 435 (1976) to the government's collection of cell-site location information. In *Miller*, the Court rejected the argument that a government subpoena to Miller's bank seeking his banking records violated the Fourth Amendment. *Smith* extended that reasoning to reject a Fourth Amendment challenge to the government's use of a pen register that recorded outgoing phone numbers dialed on a landline telephone. In both cases, the Court declined to find a reasonable expectation of privacy in information that was in the possession of a third party (*i.e.*, the bank and the phone company). The decisions held, therefore, that the government's collection of that information therefore was not a search for purposes of the Fourth Amendment. In declining to extend that reasoning by requiring a warrant for cell-site location information in *Carpenter*, the Court noted the vast amount of information associated with modern communications and clarified that "[t]he fact that the government obtained the information from a third party does not overcome [a] claim to Fourth Amendment protection." *Id*. at 2219.

34.53.        Despite a request from Plaintiffs' counsel, the Select Committee has initially did not clarified clarify that the Subpoena does not seek the content of text messages

or geolocation information, and the Internet Protocol ("IP") address information sought by the Subpoena might alone disclose Mr.- Miller's location information when he connected to various Wi-Fi networks. At a minimum, the information sought by the Subpoena – such as the names or all users associated with the account, the activation and termination dates of each device associated with the account, and all phone numbers, IP addresses, or devices that communicated with his phone number – dwarfs the type of information obtained by a pen register in *Smith* in 1979.

35.54.        Mr.- Miller submits that the information sought by the Select Committee is more akin to the cell-site data that was the subject of the Supreme Court's decision in *Carpenter*, that he has a reasonable expectation of privacy in that information, and that the Select Committee's demand for that information is a "search" under the Fourth Amendment that can only be obtained with a judicially approved warrant. To the extent the Select Committee has not disavowed an intent to seek content, geolocation data, or similar information, that must be made explicit to T-Mobile if this Court does not quash the Subpoena in its entirety.

**D.- The Subpoena Violates Federal Law**

36.55.        The Stored Communications Act, 18 U.S.C. §§ 2701 *et seq.,* prohibits an electronic service provider like T-Mobile from knowingly divulging "a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications ....)[ ]) to any governmental entity." 18 U.S.C. § 2702(a)(3).[6] The law provides exceptions that allow for the disclosure of non-content customer records under certain conditions, including where a "governmental entity" obtains a judicial warrant or "an

---

[6] The Stored Communications Act also prohibits the disclosure of the contents of communications. Our discussion here is limited to the Act's provisions pertaining to non-content information.

administrative subpoena authorized by a Federal or State statute or a Federal or State grand jury or trial subpoena . . . "[.]" 18 U.S.C. §§ 2702(c)(1), 2703(c).

37.56.     The statute defines the term "governmental entity" as "a department or agency of the United States or any State or political subdivision thereof." 18 U.S.C. § 2711(4). The definition does not include the U.S. Congress. It is not as though Congress was unaware of the need to include itself in the definition of a criminal statute if it wanted the definition to apply to itself. During the Iran-Contra prosecutions in the early 1990s, former National Security Advisor John Poindexter argued that his convictions for making false statements to Congress under 18 U.S.C. § 1001 should be vacated because that statute prohibited false statements made "in any matter within the jurisdiction of any department or agency of the United States," and that the phrase "department or agency" did not include Congress. *See United States v. Poindexter*, 951 F.2d 369, (D.C. Cir 1992); *Hubbard v. United States*, 514 U.S. 695 (1995) (reversing a conviction based on a false statement to a court and discussing in dicta the application of 18 U.S.C. § 1001 to Congress).

38.57.     While the D.C. Circuit was not "persuaded to carve out a broad legislative function exception to § 1001," Congress amended that statute in 1996 to remove any uncertainty by applying the law to false statements made "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States." P.L. 104-292 (104th Congress). The Stored Communications Act has been with us since 1986. If Congress wished to include itself in the Act's "governmental entity" exceptions to the general prohibition against disclosing information, it certainly could have done so as it did in the context of 18 U.S.C. § 1001.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs Carron Drive Apartments LP and Stephen Miller respectfully request that the Court enter judgment in their favor and against Defendants Select Committee and Chairman Bennie G. Thomson, and to order the following relief:

A.     A declaratory judgment that the Select Committee's Subpoena to T-Mobile for records relating to the cell phone number used ~~by~~ by Stephen Miller is ultra vires, unlawful, and unenforceable;

B.     A declaratory judgment that the Select Committee's Subpoena to T-Mobile serves no valid legislative purpose and exceeds the Select Committee's Constitutional authority;

C.     -A declaratory judgment that the Select Committee's Subpoena to T-Mobile violates Mr.- Miller's First Amendment protections;

D.     A declaratory judgment that the Select Committee's Subpoena to T-Mobile violates Mr.- Miller's Fourth Amendment protections;

E.     A declaratory judgment that the Select Committee's Subpoena to T-Mobile would require it to violate the Stored Communications Act;

F.     An Order quashing the Select Committee's Subpoena to T-Mobile and prohibiting its enforcement by Defendants;

G.     An injunction prohibiting Defendants from imposing sanctions for noncompliance with the Select Committee's Subpoena to T-Mobile;

H.     An award in favor of Plaintiffs for their reasonable expenses, including attorneys' fees and costs, incurred as a result of the Select Committee's issuance of the Subpoena to T-Mobile; and

I.      Any other relief to which Plaintiffs are entitled that the Court deems just, proper,

and equitable.

~~March 9~~

Dated: September 2, 2022                         Respectfully submitted,

                                                 JPROWLEY LAW PLLC

                                                 */s/ John P. Rowley III*
                                                 John P. Rowley III
                                                 DC Bar No. 392629
                                                 1701 Pennsylvania Avenue, NW
                                                 Suite 200
                                                 Washington DC 20006
                                                 john.rowley@jprowleylaw.com
                                                 Telephone: 202 525 6674


                                                 MCGLINCHEY ~~STAFFORS~~STAFFORD PLLC

                                                 */s/ Robert Neil Driscoll*
                                                 Robert Neil Driscoll
                                                 DC Bar No. 486451
                                                 1275 Pennsylvania Avenue, NW
                                                 Suite 420
                                                 Washington, DC 20004
                                                 rdriscoll@mcglinchey.com
                                                 Telephone: 202 802 9950

                                                 *Counsel for Plaintiff Carron Drive Apartments LP*
                                                 *and Plaintiff Stephen Miller*