**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CARRON DRIVE APARTMENTS LP<br><br>and<br><br>STEPHEN MILLER,<br><br>            *Plaintiffs*,<br><br>        v.<br><br>UNITED STATES HOUSE OF REPRESENTATIVES SELECT COMMITTEE TO INVESTIGATE THE JANUARY 6TH ATTACK ON THE UNITED STATES CAPITOL<br><br>and<br><br>BENNIE G. THOMPSON,<br><br>            *Defendants*. | No. 1:22-cv-00641-CJN |

**CONGRESSIONAL DEFENDANTS' MOTION TO DISMISS**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants the United States House Select Committee to Investigate the January 6th Attack on the United States Capitol and the Honorable Bennie G. Thompson respectfully move for an order dismissing Plaintiffs' Amended Complaint (Sept. 2, 2022) (ECF No. 14).  For the reasons set forth in the accompanying Memorandum of Points and Authorities, the Amended Complaint should be dismissed with prejudice.

A proposed order is attached.

Respectfully submitted,

/s/ *Douglas N. Letter*
DOUGLAS N. LETTER
  *General Counsel*
TODD B. TATELMAN
  *Principal Deputy General Counsel*
ERIC R. COLUMBUS
  *Special Litigation Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700
Douglas.Letter@mail.house.gov

-and-

ARNOLD & PORTER
John A. Freedman
Paul Fishman
Amy Jeffress
601 Massachusetts Ave, NW
Washington, D.C. 20001
(202) 942-5000
John.Freedman@arnoldporter.com
Paul.Fishman@arnoldporter.com
Amy.Jeffress@arnoldporter.com

-and-

SHER TREMONTE LLP
Justin M. Sher
Michael Tremonte[*]
Noam Biale
Maya Brodziak[*]
Kathryn E. Ghotbi[*]
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2600
JSher@shertremonte.com
MTremonte@shertremonte.com
NBiale@shertremonte.com
MBrodziak@shertremonte.com
KGhotbi@shertremonte.com

September 16, 2022

---

[*] Appearing pursuant to 2 U.S.C. § 5571(a).

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CARRON DRIVE APARTMENTS LP

and

STEPHEN MILLER,

*Plaintiffs*,

v.

UNITED STATES HOUSE OF                              No. 1:22-cv-00641-CJN
REPRESENTATIVES SELECT COMMITTEE
TO INVESTIGATE THE JANUARY 6TH
ATTACK ON THE UNITED STATES
CAPITOL

and

BENNIE G. THOMPSON,

*Defendants*.

## CONGRESSIONAL DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION .................................................................................................................... 1

BACKGROUND ...................................................................................................................... 2

      A.     The January 6th Attack and Stephen Miller ............................................... 2

      B.     The Formation of the Select Committee .................................................... 4

      C.     The Select Committee's Subpoena to T-Mobile ........................................ 5

STANDARD OF REVIEW ...................................................................................................... 6

ARGUMENT ........................................................................................................................... 6

I.      The Subpoena Is Not Overly Broad ........................................................................ 6

II.     The Subpoena Does Not Violate the First Amendment ........................................... 8

III.    The Subpoena Does Not Violate the Fourth Amendment ...................................... 10

IV.    The Stored Communications Act Does Not Limit the Select Committee's
         Authority to Obtain Non-Content Information from T-Mobile Pursuant to a
         Lawful Subpoena ................................................................................................. 12

CONCLUSION ...................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)................................................................................6

*\*Barenblatt v. United States,*
360 U.S. 109 (1959)............................................................................8, 10

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)................................................................................6

*Brock v. Loc. 375, Plumbers Int'l Union of Am., AFL-CIO,*
860 F.2d 346 (9th Cir. 1988) ......................................................................9

*Brown v. Sprint Corp. Sec. Specialist,*
2019 WL 418100 (E.D.N.Y. Jan. 31, 2019) ..................................................12

*\*Buckley v. Valeo,*
424 U.S. 1 (1976)............................................................................8, 9, 10

*Burnap v. United States,*
252 U.S. 512 (1920)...............................................................................15

*\*Carpenter v. United States,*
138 S. Ct. 2206 (2018)...................................................................10, 11, 12

*Comm. on Ways and Means v. Dep't of Treasury,*
— F.4th —, 2022 WL 3205891 (D.C. Cir. Aug. 9, 2022)................................10

*Digit. Realty Tr., Inc. v. Somers,*
138 S. Ct. 767 (2018)..............................................................................13

*\*Eastland v. U.S. Servicemen's Fund,*
421 U.S. 491 (1975)........................................................................7, 8, 10

*Eastman v. Thompson,*
— F. Supp. 3d —, 2022 WL 894256 (C.D. Cal. Mar. 28, 2022) ........................4

*Hubbard v. United States,*
514 U.S. 695 (1995).............................................................................13, 14

*McGrain v. Daugherty,*
273 U.S. 135 (1927)................................................................................6

*McPhaul v. United States,*
364 U.S. 372 (1960)..........................................................................10, 12

*Quinn v. United States*,
    349 U.S. 155 (1955)..................................................................................................6

*Republican Nat'l Comm. ("RNC") v. Pelosi*,
    — F. Supp. 3d —, 2022 WL 1294509 (D.D.C. May 1, 2022) ..........................................12

*\*Senate Permanent Subcomm. v. Ferrer*,
    199 F. Supp. 3d 125 (D.D.C. 2016) ..........................................................................8, 10

*Smith v. Maryland*,
    442 U.S. 735 (1979)..............................................................................................10, 11

*Trump v. Deutsche Bank AG*,
    943 F.3d 627 (2d Cir. 2019)..........................................................................................15

*Trump v. Mazars USA, LLP*,
    140 S. Ct. 2019 (2020)............................................................................................6, 15

*Trump v. Thompson*,
    20 F.4th 10 (D.C. Cir. 2021) ..................................................................................1, 3, 9

*United States v. Beverly*,
    943 F.3d 225 (5th Cir. 2019) ........................................................................................11

*United States v. Bramblett*,
    348 U.S. 503 (1955)......................................................................................................14

*United States v. Searcy*,
    2021 WL 3616062 (W.D. Pa. Aug. 16, 2021) ..............................................................12

**Statutes**

18 U.S.C. § 6...............................................................................................................13, 14

18 U.S.C. § 1001.........................................................................................................13, 14

18 U.S.C. §§ 2701 *et seq.*..................................................................................................12

18 U.S.C. § 2702..................................................................................................12, 13, 15

18 U.S.C. § 2711.................................................................................................................13

18 U.S.C. § 2712.................................................................................................................14

**Legislative Authorities**

False Statements Accountability Act of 1996,
    Pub. L. No. 104-292............................................................................................14

H. Res. 503, 117th Cong. (2021) ...............................................................2, 4, 7, 10

**Other Authorities**

Aaron R. Cooper, *Congressional Surveillance*,
    70 Am. U. L. Rev. 1799 (2021) ...........................................................................15

Barton Gellman, *The Election That Could Break America*,
    The Atlantic (Sept. 23, 2020), https://perma.cc/HW2H-YM5Q.........................7

Brian Naylor, *Read Trump's Jan. 6 Speech, A Key Part of Impeachment Trial*,
    NPR (Feb. 10, 2021), https://perma.cc/3P9U-8RY6 ...........................................4

Carol Leonnig & Philip Rucker, I Alone Can Fix It 456 (2021) ...................................3

Katie Benner et al., *Meadows and the Band of Loyalists:*
    *How They Fought to Keep Trump in Power*,
    N.Y. Times (Dec. 15, 2021), https://perma.cc/BP65-K5XN ...............................3

Mark Joyella, *On Fox News, Stephen Miller Says*
    *'An Alternate Set Of Electors' Will Certify Trump As Winner*, Forbes (Dec. 14, 2020),
    https://perma.cc/SW5T-8APQ ...............................................................................3

*Trump campaign continuing legal challenges after Supreme Court loss*,
    Fox News (Dec. 14, 2020), https://perma.cc/UE6Q-BUWD...............................3

## INTRODUCTION

Plaintiff Stephen Miller was involved with the effort to overturn the results of the 2020 Presidential election. He now seeks to undermine a properly constituted Congressional committee that is "investigating the single most deadly attack on the Capitol by domestic forces" and evaluating the need for legislation to "ensur[e] the safe and uninterrupted conduct of [Congress's] constitutionally assigned business." *Trump v. Thompson*, 20 F.4th 10, 35 (D.C. Cir. 2021), *inj. denied*, 142 S. Ct. 680 (2022), *cert. denied*, 142 S. Ct. 1350 (2022).

Mr. Miller, who played a key role in setting the stage for the January 6th attacks, is trying to block a subpoena issued by the House Select Committee to Investigate the January 6th Attack on the United States Capitol (Select Committee) to T-Mobile seeking subscriber information, connection records, and records of session times and durations of calls from November 1, 2020, through January 31, 2021, for phone numbers associated with him. Plaintiffs ask this Court to enjoin enforcement of that subpoena. Supreme Court and D.C. Circuit precedent, along with long-established constitutional principles, compel rejection of these claims.

*First*, the subpoena is not overly broad nor beyond the scope of the Select Committee's jurisdiction. *Second*, the subpoena does not violate the First Amendment. *Third*, the subpoena does not violate the Fourth Amendment. *Fourth*, the Stored Communications Act does not restrict the Select Committee's lawful subpoena seeking non-content information.

Mr. Miller's amended complaint adds the erroneous assertion that "any new information obtained via the Subpoena to T-Mobile will—almost by definition—be irrelevant or unrelated to the matter under investigation, given the extent of the documents and testimony that have already been provided to the Select Committee by Mr. Miller." Am. Compl. ¶ 14. However, Mr. Miller's testimony and production of some limited information that remained on his telephone many months after January 2021 is not an adequate substitute for T-Mobile providing all the

records the subpoena seeks, including subscriber information, connection records, and records of session times and durations of calls for the period of November 1, 2020, through January 31, 2021.

*First*, the Committee need not rely on the accuracy of any information Mr. Miller provided without attempting to confirm it with T-Mobile records.  *Second*, it is unknown if the search of Mr. Miller's phone and retrieval and provision of records was adequate or complete.  *Third*, even if the information provided by Mr. Miller is accurate, and even if his search was adequate and complete, the Select Committee has no way of knowing whether the information on the specific phone in his possession, at the time of his search, reflects all the T-Mobile call detail records corresponding to Mr. Miller.  Accordingly, the limited information Mr. Miller provided is not an acceptable substitute for T-Mobile, a disinterested third party that possesses all the records sought and is in the business of and experienced with maintaining and transmitting those records, providing all the records the subpoena seeks.

In short, the Amended Complaint here presses a variety of flawed legal claims designed to thwart the Select Committee's efforts to understand fully, and to recommend measures to prevent a recurrence of, the events of January 6th.  This Court should dismiss the Amended Complaint in its entirety.

## BACKGROUND

### A.    The January 6th Attack and Stephen Miller

On January 6, 2021, violent rioters seeking to stop the peaceful transfer of power following the 2020 Presidential election launched an assault on the United States Capitol.  H. Res. 503, 117th Cong. (2021), Preamble.  Rioters attacked police, breached the Capitol, and obstructed and impeded the electoral count.  The attack on the Capitol ultimately "left multiple people dead, injured more than 140 people, and inflicted millions of dollars in damage to the

Capitol." *Trump v. Thompson*, 20 F.4th at 15.  Law enforcement eventually cleared the rioters,

and the electoral count successfully resumed later that night after a nearly six-hour delay.

      The January 6th attack followed months of organized efforts to challenge the legitimacy

of the 2020 Presidential election and spread false claims about its winner.  Mr. Miller, who

served in the White House as a senior advisor and speechwriter for former President Trump, *see*

Am. Compl. ¶ 26, played a key role in these efforts.  He participated in meetings, discussions,

and events that are critical to the Select Committee's investigation.

      Days after media organizations called the Presidential election for Joe Biden, Mr. Miller

reportedly met at Trump campaign headquarters with White House Chief of Staff Mark

Meadows, Representative Scott Perry, Representative Jim Jordan, White House Press Secretary

Kayleigh McEnany, and Trump campaign manager Bill Stepien to devise "a strategy that would

become a blueprint for Mr. Trump's supporters in Congress: Hammer home the idea that the

election was tainted, announce legal actions being taken by the campaign, and bolster the case

with allegations of fraud."[1]

      In a television interview on December 14, 2020, the day the Electoral College voted, Mr.

Miller claimed that "judges are caving" to pressure to reject the Trump campaign's claims of

election fraud, repeated many rejected claims of election fraud, and described the Trump

campaign's efforts to procure so-called "alternate slate[s] of electors" for Mr. Trump from states

that he had lost.[2]  The fake elector initiative was one component of the effort to pressure the Vice

---

[1] Katie Benner et al., *Meadows and the Band of Loyalists: How They Fought to Keep Trump in Power*, N.Y. Times (Dec. 15, 2021), https://perma.cc/BP65-K5XN.

[2] Mark Joyella, *On Fox News, Stephen Miller Says 'An Alternate Set Of Electors' Will Certify Trump As Winner*, Forbes (Dec. 14, 2020), https://perma.cc/SW5T-8APQ; *see Trump campaign continuing legal challenges after Supreme Court loss*, Fox News (Dec. 14, 2020), https://perma.cc/UE6Q-BUWD.

President and Congress and obstruct the counting of electoral votes during the January 6, 2021, Joint Session of Congress, which one federal judge has called a "coup in search of a legal theory."[3]

Mr. Miller was also part of the team that prepared President Trump's remarks for his January 6th speech at the Ellipse.[4]  In that speech, the President called on Congress to count certain electoral votes but not others; said that "if Mike Pence does the right thing, we win the election"; instructed the crowd to "walk down Pennsylvania Avenue" to go "to the Capitol" to try to give Members of Congress "the kind of pride and boldness that they need to take back our country"; and warned that "if you don't fight like hell, you're not going to have a country anymore."[5]

B.      **The Formation of the Select Committee**

In response to the unprecedented attack on January 6th, the House of Representatives adopted House Resolution 503, "establish[ing] the Select Committee to Investigate the January 6th Attack on the United States Capitol."  H. Res. 503 § 1.  The resolution authorizes the Select Committee to: (1) "investigate the facts, circumstances, and causes relating to the domestic terrorist attack on the Capitol"; (2) "identify, review, and evaluate the causes of and the lessons learned from the domestic terrorist attack on the Capitol" and "relating to the interference with the peaceful transfer of power"; and (3) "issue a final report to the House containing such findings, conclusions, and recommendations for corrective measures . . . as it may deem necessary."  *Id.* §§ 3(1), 4(a)(1)-(3).

---

[3] *Eastman v. Thompson*, — F. Supp. 3d —, 2022 WL 894256, at *27 (C.D. Cal. Mar. 28, 2022).
[4] Carol Leonnig & Philip Rucker, I Alone Can Fix It 456 (2021).
[5] Brian Naylor, *Read Trump's Jan. 6 Speech, A Key Part of Impeachment Trial*, NPR (Feb. 10, 2021), https://perma.cc/3P9U-8RY6.

C.      The Select Committee's Subpoena to T-Mobile

In furtherance of its duty to investigate the facts, circumstances, and causes of the attack on January 6th, the Select Committee has issued subpoenas to various government agencies, private companies, and certain individuals.  The Select Committee served T-Mobile with a subpoena seeking subscriber information, connection records, and records of session times and durations of calls for the period of November 1, 2020, through January 31, 2021, for phone numbers associated with Mr. Miller.  As noted in the Schedule that accompanied the subpoena, Section A of which is attached to this Memorandum as Exhibit A, the subpoena "does not call for the production of the content of any communications or location information."  Although the subpoena Schedule included IP addresses, the Select Committee hereby withdraws that request.

Mr. Miller and Carron Drive Apartments LP, which purports to be the subscriber for the family plan account that includes Mr. Miller's phone, filed this case on March 9, 2022.  ECF No. 1.  In their Amended Complaint, filed on September 2, 2022, Plaintiffs ask this Court to declare that the T-Mobile Subpoena: "is ultra vires, unlawful, and unenforceable"; "serves no valid legislative purpose and exceeds the Select Committee's Constitutional authority"; "violates Mr. Miller's First Amendment protections"; "violates Mr. Miller's Fourth Amendment protections"; and "would require [T-Mobile] to violate the Stored Communications Act."  Am. Compl. Prayer for Relief ¶¶ a-e.

Plaintiffs also ask this Court to issue an order "quashing the Select Committee's Subpoena to T-Mobile and prohibiting its enforcement by Defendants"; an injunction "prohibiting Defendants from imposing sanctions for noncompliance with the Select Committee's Subpoena to T-Mobile"; and an award for expenses, including attorneys' fees and costs.  *Id.* ¶¶ f-h.

5

**STANDARD OF REVIEW**

To survive a motion to dismiss under Rule 12(b)(6), Plaintiffs must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

**ARGUMENT**

Plaintiffs' various theories have no merit, and this suit should be dismissed.

**I.      The Subpoena Is Not Overly Broad**

Plaintiffs claim that "the Subpoena is not 'related to, and in furtherance of, a legitimate task of the Congress.'"  Am. Compl. ¶ 43 (quoting *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2031 (2020)).  Plaintiffs are wrong.

Congress's broad power of investigation is firmly established.  The Supreme Court has confirmed that "the power of inquiry—with process to enforce it—is an essential and appropriate auxiliary to the legislative function." *McGrain v. Daugherty*, 273 U.S. 135, 174 (1927).  "This power, deeply rooted in American and English institutions, is indeed co-extensive with the power to legislate." *Quinn v. United States*, 349 U.S. 155, 160 (1955).  "Without the power to investigate . . . Congress could be seriously handicapped in its efforts to exercise its constitutional function wisely and effectively." *Id*. at 160-61.  This "broad" and "indispensable" power "encompasses inquiries into the administration of existing laws, studies of proposed laws, and surveys of defects in our social, economic or political system for the purpose of enabling the Congress to remedy them." *Mazars*, 140 S. Ct. at 2031 (internal quotation marks and citation omitted).

The January 6th attack did not materialize out of thin air.  It was the culmination of months of efforts to delegitimize the results of the Presidential election—an effort that began

before the November 3, 2020, election even took place.  *See, e.g.*, Barton Gellman, *The Election That Could Break America*, The Atlantic (Sept. 23, 2020).[6]  The Select Committee is investigating the relationship between the attack and the massive efforts to undermine the election results.

House Resolution 503 established the Select Committee "[t]o investigate and report upon the facts, circumstances, and *causes* relating to the January 6, 2021 domestic terrorist attack upon the United States Capitol Complex."  H. Res. 503 § 3(1) (emphasis added); *see also id.* § 4(a)(1).  As discussed above, *see supra* at 2-4, Mr. Miller reportedly was involved in multiple aspects of Mr. Trump's months-long effort to overturn the election, from the promotion of unfounded election fraud claims to the alternate elector scheme to the drafting of President Trump's January 6th speech.  The Select Committee is investigating each of these elements as part of its inquiry into the causes of the January 6th attack.

Plaintiffs argue that the subpoena is "overly broad and calls for the production of information that is unrelated to the purposes of the Select Committee's investigation."  Am. Compl. ¶ 47.  But the subpoena is actually quite focused: on call detail records relating to phone numbers associated with Mr. Miller during the three-month period involving the run-up to January 6th and its aftermath.  That Mr. Miller may have had communications unrelated to the subject of the investigation does not render the subpoena overly broad.  If it did, then virtually *no* subpoena for call detail records could ever be issued, because nearly every person uses their phone for multiple purposes.  *Cf. Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 509 (1975) ("The very nature of the investigative function—like any research—is that it takes the searchers up some 'blind alleys' and into nonproductive enterprises.").

---

[6] *Available at* https://perma.cc/HW2H-YM5Q.

Plaintiffs also assert that "Mr. Miller's phone number is included with other numbers assigned by T-Mobile to the Family Plan Account" and suggest that "it is possible that T-Mobile may respond to the Subpoena by producing data for other numbers assigned to the Family Plan Account." Am. Compl. ¶ 46. The subpoena seeks only records related to Mr. Miller's phone numbers; the Select Committee has no interest in records relating to phone numbers that do not pertain to him.

## II.   The Subpoena Does Not Violate the First Amendment

Plaintiffs' claim that the subpoena to T-Mobile violates the First Amendment (Am. Compl. ¶¶ 49-51) is squarely foreclosed by *Eastland*, 421 U.S. at 509-10. There, the Supreme Court rejected an organization's argument that a Congressional subpoena's purpose was to "'harass, chill, punish, and deter' [it] in the exercise of [its] First Amendment rights," explaining that the typical First Amendment balancing test "plays no part" when a Congressional subpoena is involved. *Id.* at 509 n.16. Here, too, Plaintiffs' First Amendment arguments against enforcement of the Select Committee's subpoena must be rejected.

Even if their claim were subject to a balancing test, it would still fail: the balancing of "the competing private and public interests at stake" here plainly favors the Select Committee. *Barenblatt v. United States*, 360 U.S. 109, 126 (1959). This Court has rejected claims that issuance of a Congressional subpoena violates a respondent's First Amendment rights. *See Senate Permanent Subcomm. v. Ferrer*, 199 F. Supp. 3d 125, 138 (D.D.C. 2016), *aff'd*, 856 F.3d 1080 (D.C. Cir. 2017). That conclusion is entirely consistent with the Supreme Court's recognition that the public interest is extremely high when the focus is on ensuring the "free functioning of our national institutions." *Buckley v. Valeo*, 424 U.S. 1, 66 (1976) (citation omitted). The Select Committee is doing precisely that by seeking the records at issue here.

Plaintiffs fail to assert any First Amendment interest that could outweigh the very grave public interest here.  The mere assertion that compliance with the subpoena "may improperly disclose information to persons who are interested in merely making partisan points or harassing Mr. Miller," Am. Compl. ¶ 50, does not suffice to make out a First Amendment claim.  *See Buckley*, 424 U.S. at 74 (showing an associational injury requires demonstrating a "reasonable probability that the compelled disclosure . . . will subject them to threats, harassment, or reprisals from either Government officials or private parties"); *Brock v. Loc. 375, Plumbers Int'l Union of Am., AFL-CIO*, 860 F.2d 346, 350 n.1 (9th Cir. 1988) (reviewing case law and noting that courts have "emphasized in each of those decisions . . . the need for objective and articulable facts, which go beyond broad allegations or subjective fears . . . . [A] merely subjective fear of future reprisals is an insufficient showing of infringement of associational rights").

Assuming for purposes of argument that Plaintiffs could substantiate a legitimate interest implicated by the subpoena, that interest would be outweighed by the Select Committee's "uniquely weighty interest in investigating the causes and circumstances of the January 6th attack." *Trump v. Thompson*, 20 F.4th at 35.  Here, the Select Committee's subpoena seeks records relevant to determining the root causes of the violent January 6th attack on Congress itself and the constitutional responsibility to officially count Presidential electoral votes.  To determine the extent of the efforts by Mr. Trump and his allies to overturn the election results and interfere with the peaceful transfer of power, the Select Committee requires a record of relevant communications.  This is a paradigmatic example of the governmental interest in the

"free functioning of our national institutions."  *Buckley*, 424 U.S. at 66 (citation omitted).

Accordingly, Plaintiffs' First Amendment claim fails.[7]

### III.  The Subpoena Does Not Violate the Fourth Amendment

Plaintiffs' claim that the subpoena violates the Fourth Amendment (Am. Compl. ¶¶ 52-

54) is mistaken.  A subpoena is not impermissibly overbroad if its call for documents or

testimony is within the scope of the Congressional inquiry at issue.  *See McPhaul v. United*

*States*, 364 U.S. 372, 382 (1960).  The Select Committee's inquiry includes examining the

January 6th attack as well as its "circumstances" and "causes," to inform a consideration of

"changes in law, policy, procedures, rules, or regulations."  H. Res. 503 §§ (3)(1), 4(c).  Given

that scope, the subpoena is appropriately tailored to meet the Select Committee's mandate and is

not impermissibly broad.  *See Eastland*, 421 U.S. at 509.  Because the seeds of the January 6th

attack appear to have been planted months earlier, it is entirely appropriate to examine records

dating back to November.

Plaintiffs improperly rely on the Supreme Court's decision in *Carpenter v. United States*,

138 S. Ct. 2206 (2018).  *See* Am. Compl. ¶¶ 52, 54.  *Carpenter*, by its own terms, does not apply

to the records the subpoena seeks.  In that case, the Supreme Court faced the question of whether

the Government's collection of historical cell-site location information ("CSLI") from a third-

party telecommunications company constituted a "search" under the Fourth Amendment.  138 S.

Ct. at 2211.  The Court had previously held in *Smith v. Maryland*, that recording the numbers

---

[7] Plaintiffs' allegations that the Chairman and the Select Committee are "misusing their authority to investigate political adversaries," Am. Compl. ¶ 49, is both completely false and not judicially cognizable: "so long as Congress acts in pursuance of its constitutional power . . . the Judiciary lacks authority to intervene on the basis of the motives which spurred the exercise of that power."  *Ferrer*, 199 F. Supp. 3d at 143 (quoting *Barenblatt*, 360 U.S. at 132-33) (alterations omitted); *see also Comm. on Ways & Means v. Dep't of Treasury*, — F.4th —, 2022 WL 3205891, at *4 (D.C. Cir. Aug. 9, 2022).

that a particular phone number dialed did not constitute a search because, among other reasons, such records were voluntarily disclosed to the phone company and thus there was no reasonable expectation of privacy in them.  442 U.S. 735, 743-44 (1979).

In *Carpenter*, although historical CSLI data was in the possession of a third-party telecommunications company, the Court "decline[d] to extend" *Smith* to historical CSLI, "[g]iven the unique nature of cell phone *location* records" and their ability to "achieve[] near perfect surveillance."  *Carpenter*, 138 S. Ct. at 2217-18 (emphasis added).  In particular, the Court distinguished historical CSLI from the "limited capabilities of a pen register," which consisted of "telephone call logs [that] reveal little in the way of 'identifying information.'"  *Id.* at 2219 (citation omitted).

The T-Mobile subpoena at issue here seeks only subscriber information, connection records, and records of session times and durations.  *See* Ex. A.  It does not seek historical CSLI or the contents or substance of any communications.  *See id.*  The records sought by the Select Committee, therefore, are governed squarely by *Smith*, not *Carpenter*.  *See Carpenter*, 138 S. Ct. at 2210 (stating that decision is a "narrow" one that "does not disturb the application of *Smith*").  With regard to Plaintiffs' assertion that "the Internet Protocol ('IP') address information sought by the Subpoena might alone disclose Mr. Miller's location information when he connected to various Wi-Fi networks," Am. Compl. ¶ 53, the Select Committee withdraws its request for IP address information, *see supra* at 4.

Courts addressing suppression motions after *Carpenter* have consistently held that the decision does not apply to the kinds of records sought here, such as subscriber information and call-detail records.  *See, e.g.*, *United States v. Beverly*, 943 F.3d 225, 239 (5th Cir. 2019) (holding *Carpenter* does not apply to subscriber information and call-detail records, and

11

declining to assume that such records may be used to track location); *United States v. Searcy*, No. 19-135, 2021 WL 3616062, at \*5 (W.D. Pa. Aug. 16, 2021) ("Except for CSLI . . . Mr. Searcy has no legitimate expectation of privacy in information he voluntarily turns over to third parties[.]" (internal quotation marks and citation omitted)); *Brown v. Sprint Corp. Sec. Specialist*, No. 17-CV-2561, 2019 WL 418100, at \*4 (E.D.N.Y. Jan. 31, 2019) (holding *Carpenter* does not apply to subscriber and call-detail records).

Thus, *Carpenter* simply does not apply to the third-party T-Mobile subpoena here, and the T-Mobile subpoena does not violate Plaintiffs' Fourth Amendment rights. Judge Kelly reached the same conclusion in *Republican National Committee ("RNC") v. Pelosi*, in which the plaintiff had argued that *Carpenter* applied. — F. Supp. 3d —, 2022 WL 1294509, at \*23-24 (D.D.C. May 1, 2022), *appeal dismissed as moot and judgment vacated*, No. 22-5123 (D.C. Cir. Sept. 16, 2022); *see also* Mem. P. & A. in Supp. of Pl.'s Mot. for Prelim. Inj. at 14, *RNC*, No. 22-659 (Mar. 15, 2022), ECF No. 8; Reply Mem. P. & A. in Supp. of Pl.'s Mot. for Prelim. Inj. at 13, 15-16, *RNC*, No. 22-659 (Mar. 29, 2022), ECF No. 21. Judge Kelly applied *McPhaul*, and concluded that "the subpoena is not more sweeping than the one sustained against challenge in *McPhaul*," and thus "the Court cannot say that the breadth of the subpoena is such as to violate the Fourth Amendment." 2022 WL 1294509, at \*24 (internal quotation marks, alteration, and citation omitted).

## IV.   The Stored Communications Act Does Not Limit the Select Committee's Authority to Obtain Non-Content Information from T-Mobile Pursuant to a Lawful Subpoena

Plaintiffs assert (Am. Compl. ¶¶ 5-57) that the Select Committee's subpoena to T-Mobile violates the Stored Communications Act, 18 U.S.C. §§ 2701 *et seq*. But nothing in that Act limits the ability of a Congressional committee to obtain non-content information from a "person

or entity providing an electronic communication service to the public" via a lawful, duly authorized subpoena.  18 U.S.C. § 2702(a)(1).

The Stored Communications Act generally allows disclosure of non-content records, although it prohibits (with one exception) voluntary disclosure of non-content records to "governmental entit[ies]."  *Id.* § 2702(a)(3), (c)(4).  The definition of the term "governmental entity," as used in the Act, does not include Congress.  *Id.* §§ 6, 2711(4).  And the Act expressly *permits* disclosure to "any person other than a governmental entity."  *Id.* § 2702(c)(6).

The statute's definitional terms make clear that Congress did not intend for the phrase "governmental entity" to include Congress.  *See Digit. Realty Tr., Inc. v. Somers*, 138 S. Ct. 767, 776 (2018) ("'When a statute includes an explicit definition, we must follow that definition,' even if it varies from a term's ordinary meaning." (citation omitted)).  The Act defines "governmental entity" as "a department or agency of the United States or any State or political subdivision thereof."  18 U.S.C. § 2711(4).  The terms "department" and "agency" have particular meanings in Title 18, as defined in Section 6.  That provision defines "department" as "one of the *executive* departments enumerated in section 1 [now § 101] of Title 5, unless the context shows that such term was intended to describe the executive, legislative, or judicial branches of the government."  *Id.* § 6 (emphasis added).  It likewise defines "agency" as "any department, independent establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest, unless the context shows that such term was intended to be used in a more limited sense."  *Id.* The Select Committee is neither an executive department nor a governmental agency, and no "context" in the Stored Communications Act suggests that those terms apply to Congress.

13

The Supreme Court addressed a similar issue of statutory interpretation regarding the phrase "any department or agency of the United States" in *Hubbard v. United States*, 514 U.S. 695, 704 (1995). That case concerned the applicability of 18 U.S.C. § 1001, forbidding making false statements to "any department or agency of the United States," to the Judicial Branch. *Id.* at 698. The Court noted initially that the definitions in Section 6 presumptively applied to "all of Title 18," including Section 1001. *Id.* at 700. The Court stated it was "incontrovertible" that "agency" did not refer to any court within the Judicial Branch. *Id.* The Court further concluded that nothing in the context of Section 1001 "shows that" the term "department" was intended to apply beyond the Executive Branch. *Id.* (quoting 18 U.S.C. § 6). The Court stated that there is "nothing in the text of the statute, or in any related legislation, that even suggests—let alone 'shows'—that the normal definition of 'department' was not intended." *Id.* at 701.[8]

As in *Hubbard*, the Act's definition of "governmental entity" and the definition contained in Section 6 make plain that the term "governmental entity" does not apply to Congress. There is nothing in the Act that even suggests, let alone "shows," that Congress intended to include itself in the definition. Moreover, the statute contains other provisions that further reinforce this plain meaning.

The Act provides that, in the case of willful or intentional violations, the "head of the department or agency" in which the violation occurred may subject the violator to administrative

---

[8] *Hubbard* overruled *United States v. Bramblett*, 348 U.S. 503 (1955), which held that the statute applied to false statements made to the Legislative Branch. 514 U.S. at 715. The *Hubbard* Court stated that *Bramblett* "erred by giving insufficient weight to the plain language of §§ 6 and 1001," resulting "in a decision that is at war with the text of not one, but two different Act of Congress." *Id.* at 702, 708. After the ruling in *Hubbard*, Congress amended the statute at issue, 18 U.S.C. § 1001. *See* False Statements Accountability Act of 1996, Pub. L. No. 104-292, § 2, 110 Stat. 3459.

discipline.  18 U.S.C. § 2712(c).  But the leadership of Congress and its committees do not constitute a "head" of an agency or department.  As the Supreme Court long ago established, "[t]he term 'head of a department' means . . . the Secretary in charge of a great division of the *executive branch* of the government, like the State, Treasury, and War, who is a member of the Cabinet."  *Burnap v. United States*, 252 U.S. 512, 515 (1920) (emphasis added) (citation omitted); *see also Trump v. Deutsche Bank AG*, 943 F.3d 627, 642 (2d Cir. 2019) (holding that use of term "head of the agency or department" indicated Congress did not intend Right to Financial Privacy Act to apply to Congressional committee), *vacated on other grounds by Trump v. Mazars USA, LLP*, 140 S. Ct. 2019 (2020); *see also* Aaron R. Cooper, *Congressional Surveillance*, 70 Am. U. L. Rev. 1799, 1825-34 (2021) (surveying statutory text, context, and legislative history and concluding that in the Stored Communications Act Congress intended to exempt itself from the term "governmental entity").

Accordingly, the plain text of the Stored Communications Act, as well as the overall context and structure of the statute, make clear that Congress is not a "governmental entity" as that term is defined in the Act.  As a result, because the Act expressly permits disclosure of non-content records to "any person other than a governmental entity," 18 U.S.C. § 2702(c)(6), the statute cannot be read to prohibit their disclosure to the Select Committee.

## CONCLUSION

For the reasons stated above, this Court should dismiss the Amended Complaint in its entirety.

Respectfully submitted,

/s/ *Douglas N. Letter*
DOUGLAS N. LETTER
  *General Counsel*
TODD B. TATELMAN
  *Principal Deputy General Counsel*
ERIC R. COLUMBUS
  *Special Litigation Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700
Douglas.Letter@mail.house.gov

John A. Freedman[*]
Paul Fishman[*]
Amy Jeffress[*]
David J. Weiner[*]
John M. Hindley[*]
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave, NW
Washington, D.C. 20001
(202) 942-5000
John.Freedman@arnoldporter.com
Paul.Fishman@arnoldporter.com
Amy.Jeffress@arnoldporter.com
David.Weiner@arnoldporter.com
John.Hindley@arnoldporter.com

SHER TREMONTE LLP
Justin M. Sher[*]
Michael Tremonte[*]
Noam Biale[*]
Maya Brodziak[*]
Kathryn E. Ghotbi[*]
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2600
JSher@shertremonte.com
MTremonte@shertremonte.com
NBiale@shertremonte.com
MBrodziak@shertremonte.com
KGhotbi@shertremonte.com

16

Dated: September 16, 2022

* Appearing pursuant to 2 U.S.C. § 5571(a).

**CERTIFICATE OF SERVICE**

I hereby certify that on September 16, 2022, I caused the foregoing document to be filed via the CM/ECF system for the U.S. District Court for the District of Columbia, which I understand caused a copy to be served on all registered parties.

*/s/ Douglas N. Letter*
Douglas N. Letter