**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CARRON DRIVE APARTMENTS LP, *et al.*, )<br><br>Plaintiffs, )<br><br>vs. )<br><br>UNITED STATES HOUSE OF )<br>REPRESENTATIVES SELECT COMMITTEE )<br>TO INVESTIGATE THE JANUARY 6TH )<br>ATTACK ON THE UNITED STATES )<br>CAPITOL, *et al.*, )<br><br>Defendants. )<br>_____ ) | Case No. 1:22-cv-00641-CJN |

**MEMORANDUM IN OPPOSITION OF**
**CONGRESSIONAL DEFENDANTS' MOTION TO DISMISS**

Plaintiffs Carron Drive Apartments LP ("Carron Drive") and Stephen Miller (collectively, "Plaintiffs") submit this memorandum in opposition to the Motion to Dismiss (Doc. 16) of Defendants, the United States House Select Committee to Investigate the January 6th Attack on the U.S. Capitol (the "Select Committee" or "Committee") and Chairperson Bennie G. Thompson (collectively, "Defendants").

## I.    INTRODUCTION

Having improperly issued a subpoena to T-Mobile seeking subscriber information and connection records on a family cell phone plan belonging to Carron Drive—on which Stephen Miller is a user—Defendants are now trying to change the subject from the actual compulsory process they served to a hypothetical subpoena that is not before the Court.

Specifically, Defendants assert a defense to a congressional subpoena that Plaintiffs did not move to quash. They do not attempt to defend the actual subpoena they issued to T-Mobile that seeks IP address information from which Committee staff could conduct a warrantless

1

search by running geolocation tools to track and surveil a private citizen's near exact location. That is not permissible.

Defendants repeat the general importance of their investigation in an attempt to legitimize their subpoena to T-Mobile, while studiously ignoring the fact that Mr. Miller has already testified for eight hours before the Select Committee and provided all relevant information on the precise topics of their investigation. (*See generally* Am. Compl.) Mr. Miller did not withhold any responsive and non-privileged information or documents from the Select Committee. In moving to dismiss Plaintiffs' lawsuit, Defendants do not rebut any of these allegations. Indeed, they fail to mention—or address—Mr. Miller's extensive cooperation with the Committee.

Defendants offer three generic reasons in support of their argument for obtaining information from T-Mobile.

> *First*, the Committee need not rely on the accuracy of any information Mr. Miller provided without attempting to confirm it with T-Mobile records. *Second*, it is unknown if the search of Mr. Miller's phone and retrieval and provision of records was adequate or complete. *Third*, even if the information provided by Mr. Miller is accurate, and even if his search was adequate and complete, the Select Committee has no way of knowing whether the information on the specific phone in his possession, at the time of his search, reflects all the T-Mobile call detail records corresponding to Mr. Miller.

(Defs' Mot. to Dismiss at 2) (emphasis in original.) Such an argument would apply to virtually *everyone* who appears before Congress and renders the "legislative purpose" requirement a nullity by granting congressional committees routine access to private, personal electronic information of any person who might testify before Congress. That is not the law.

Congress cannot "expose for the sake of exposure." *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2032 (2020). There must be a "valid legislative purpose." *Id.* Defendants here do not sufficiently explain how the personal and private information sought from T-Mobile about Mr. Miller and his family members would further any valid legislative purpose—especially

given the extensive phone, text records, and testimony that he has already provided to the Select Committee. Defendants are already in possession of Mr. Miller's work records and cell phone information from his White House and Trump 2020 presidential campaign accounts. They also have his personal records and cell phone information, following a diligent and expensive search of his records in response to the subpoena the Committee served upon him for documents and testimony. Further, Defendants have his testimony and recollection about the individuals with whom he communicated, when those conversations occurred, and the length and content of those communications during the time period before and after January 6th—whether such conversations took place in person, by phone, or by text. (*See generally* Am. Compl.)

At this point, the subpoena to T-Mobile serves no valid legislative purpose. The robust document production and testimony that Mr. Miller previously provided to the Select Committee show that the subpoena to T-Mobile borders on harassment, or is a pretext for engaging in improper *ad-hoc* investigative activities that are more properly conducted, if at all, by the Department of Justice, not Congress. Whatever legislative purpose the Committee may now claim is not furthered by permitting it to intrude (again) into the private affairs of Mr. Miller and his family, whose information and connection records are within the broad scope of the T-Mobile subpoena.[1] Simply put, this inquiry does not further any legitimate purpose and improperly intrudes on the privacy of Mr. Miller—a political adversary—and his family.

Rather than address these complaints, Defendants retell the tragic and well-known events of January 6th and argue that the Select Committee was properly formed in accordance with

---

[1] By Defendants' own admission, as noted in the Schedule that accompanied the subpoena to T-Mobile, they are seeking subscriber information for "All authorized users on the associated account," "All phone numbers associated with the account," and "Other subscriber numbers or identities (including temporarily assigned network addresses and registration Internet Protocol (IP) addresses)" among other things. (Doc. 16-1.)

House Resolution 503. However, this lawsuit is not about how awful the January 6th attack on the Capitol was, and Plaintiffs do not ask this Court to revisit whether the Select Committee was properly formed.[2] This lawsuit concerns the validity of a congressional subpoena that seeks subscriber information and connection records—to include IP addresses and other call and data detail records—of private citizens belonging to a family cell phone plan and a witness who has already provided the Select Committee with the phone and text information it might conceivably need in pursuit of any legislative purpose and testified about the same.

The Committee's position essentially appears to be that it is entitled to compel the disclosure of personal cell phone records of any witness—regardless of the extent of the information it already has and the level of cooperation already offered—without making a showing that the records are necessary for its purported legislative purpose. Although it is true that Congress has broad legal authority to issue subpoenas in support of its own legislative functions, this authority is not without limit. Plaintiffs accordingly request that this Court set reasonable parameters on the Committee's untethered fishing expedition.

For these and other reasons discussed below, Defendants' motion should be denied.

## II.   BACKGROUND

Following the 2020 presidential election, on December 14, 2020, the Electoral College met, and a majority of the electors cast their votes for Joseph R. Biden and Kamala D. Harris. On January 6, 2021, a mob attacked the U.S. Capitol, where the House and Senate were set to count

---

[2] Although Mr. Miller contends—and preserves for the record and if necessary any subsequent appeal—that the Select Committee is not duly constituted because it has only nine members and no member recommended by Minority Leader McCarthy. The Committee's authorizing resolution states Speaker Pelosi "shall" appoint thirteen members, five of whom "shall" be appointed after consultation with Minority Leader McCarthy. *See* H.R. Res. 503, § 2(a). The House has not satisfied those conditions.

and certify the Electoral College vote. On June 30, 2021, the House of Representatives established the Select Committee to Investigate the January 6th Attack on the United States Capitol. *See* H.R. Res. 503, § 1, 167 Cong. Rec. H3322-24-H3335 (Jun. 30, 2021). The House instructed the Committee to "investigate and report upon the facts, circumstances, and causes related to" the attack, including "the influencing factors that fomented" it. *Id.* at § 3(1). (Am. Compl. ¶ 34.) To do that work, the House empowered the Committee to investigate how "influencing factors" contributed to the attack and how "technology . . . [or] campaigns may have factored into the motivation" of it, *id.* at § 4(a)(1)(B), including by examining the roles of any relevant "entities of the public and private sector," *id.* at § 4(a)(1)(C).

The authorizing resolution for the Select Committee establishes its procedures for the issuance of subpoenas. *Id.* at § 5. In this respect, it makes Rule XI of the Rules of the House of Representatives applicable to the Select Committee. *Id.* § 5(c). (Am. Compl. ¶ 34.) Rule XI, Clause 2(m)(3)(A)-(D) permits a House committee to issue investigative subpoenas for documents or testimony to "any person or entity." *See* Rules of the House of Representatives, 117th Cong. (Feb. 2, 2021). (Am. Compl. ¶ 34 & n.2.)

On November 5, 2021, the Select Committee served a subpoena on Mr. Miller for testimony and documents, including communications relating to the 2020 presidential election, the certification of the election, the January 6th attack on the Capitol, and pre and post January 6th events. Mr. Miller produced a multitude of documents and data pursuant to this subpoena, and on April 14, 2022, he sat for a day-long deposition conducted by the Committee's counsel. (Am. Compl. ¶ 2.)

Mr. Miller's production to the Committee was comprised of hundreds of pages of documents and included content and associated phone numbers and "envelope data" (*i.e.*, time-

and-date stamps of transmission) of all responsive text message communications that could be retrieved from Mr. Miller's personal cell phone number assigned by T-Mobile to the Carron Drive family plan account, following a diligent and expensive search of his personal cell phone and electronic devices with the assistance of a forensic expert hired by his counsel. (Am. Compl. ¶¶ 5 and 22.) At his deposition, members of the Committee and their staff comprehensively examined Mr. Miller's recollection of his documents and communications related to the matters under investigation by the Committee, during a sworn deposition that lasted more than eight hours. (Am. Compl. ¶ 7.)

Mr. Miller withheld no responsive and non-privileged information or documents from the Select Committee. As the Committee well knows from his testimony, which has never been reopened or continued (Am. Compl. ¶ 8), Mr. Miller was largely uninvolved in White House business between November 19, 2021 and January 5, 2022—whether in a personal capacity, as senior advisor to President Trump in the White House, or in his work for the Trump 2020 presidential campaign—because of the serious medical conditions of his wife and new-born daughter (Am. Compl. ¶ 12).

For whatever reason, the Select Committee served a subpoena to T-Mobile on February 22, 2022, seeking subscriber information and connection records from November 1, 2020 to January 31, 2021 for "[a]ll authorized users on the associated account" and "[a]ll phone numbers associated with the account" of Carron Drive. (Am. Compl. ¶ 36.) Carron Drive is a California limited partnership, and Carron Drive is the subscriber for a T-Mobile family plan phone account that is used by Michael Miller, Miriam Miller, and their children, including Stephen Miller. (Am. Compl. ¶¶ 15 and 36.)

The schedule accompanying the subpoena to T-Mobile seeks the production of two categories of information.

1. <u>Subscriber Information</u>: All subscriber information for the Phone Number, including:

   a. Name, subscriber name, physical address, billing address, e-mail address, and any other address and contact information;

   b. All authorized users on the associated account;

   c. All phone numbers associated with the account;

   d. Length of service (including start date) and types of service utilized;

   e. Telephone or instrument numbers (including MAC addresses), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN") Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI") associated with the accounts;

   f. Activation date and termination date of each device associated with the account;

   g. Any and all number and/or account number changes prior to and after the account was activated;

   h. Other subscriber numbers or identities (including temporarily assigned network addresses and registration Internet Protocol ("IP") addresses); and

2. <u>Connection Records and Records of Session Times and Durations</u>: All call, message (SMS & MMS), Internet Protocol ("IP"), and data-connection detail records associated with the Phone Numbers, including all phone numbers, IP addresses, or devices that communicated with the Phone Number via delivered and undelivered inbound, outbound, and routed calls, messages, voicemail, and data connections.

(Am. Compl. ¶36.)[3] The Select Committee has represented to the Court that the subpoena to T-Mobile does not call for the production of communication content or location information. (Defs' Mot. to Dismiss at 5.)[4]

---

[3] (*See also* Doc. 16-1.)

[4] Plaintiffs do not have a full copy of the subpoena, schedule pages, and accompanying correspondence to T-Mobile to evaluate Defendants' representations and stated legislative

On February 28, 2022, T-Mobile notified Carron Drive that T-Mobile had been served with the Select Committee's subpoena. T-Mobile indicated in this notice that it planned to produce the requested information and comply with the subpoena, unless Carron Drive sought legal action to block compliance. (Am. Compl. ¶¶17-18.) The instant lawsuit followed.

On March 9, 2022, Plaintiffs filed suit to challenge the subpoena. (Doc. 1.) On September 2, 2022, Plaintiffs filed an amended complaint. (Doc. 14.) The Amended Complaint asserts four claims: (1) the subpoena is overly broad and seeks information that is unrelated to the Select Committee's investigation; (2) the subpoena violates the First Amendment; (3) the subpoena violates the Fourth Amendment; and (4) the subpoena violates the Stored Communications Act, 18 U.S.C. § 2701 et seq. (Doc. 14.)

### III.  LEGAL STANDARD

"When evaluating a motion to dismiss, the Court must treat the complaint's factual allegations as true and afford the plaintiff the benefit of all inferences that can be derived from the facts alleged." *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Hous. & Urb. Dev.*, 415 F. Supp. 3d 215, 221 (D.D.C. 2019). Construing the plaintiff's factual allegations as true, to survive a Rule 12(b)(6) motion to dismiss, the claim to relief must be "'plausible on its face,' enough to 'nudge [the] claims across the line from conceivable to plausible.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).The Court may consider "documents attached to or incorporated in the complaint, matters of which courts may take judicial notice, and documents appended to a motion to dismiss whose authenticity is not disputed, if they are

---

objectives of the subpoena to T-Mobile. Defendants have only made available a single page of the subpoena. (*See* Doc. 16-1.) This record would benefit from the submission of a complete copy of the subpoena package delivered to T-Mobile by Defendants.

referred to in the complaint and integral to a claim." *Harris v. Amalgamated Transit Union Local 689*, 825 F. Supp. 2d 82, 85 (D.D.C. 2011)

## IV.  ARGUMENT

### A.    Rather than Address the Actual Subpoena to T-Mobile, Defendants Attempt to Amend it in its Briefing

Recognizing that it has overreached, Defendants tries to change the subject to a hypothetical subpoena rather than the actual subpoena. Specifically, the Select Committee now represents that it does not seek Carron Drive records unrelated to Mr. Miller, and it purports to drop its request for IP address information related to Mr. Miller's phone—presumably to avoid running afoul of the Fourth Amendment's prohibition on unreasonable searches and seizures. That, however, is not what not the actual subpoena to T-Mobile requests.

In considering a motion to dismiss for failure to state a claim, a court is confined to the four corners of the complaint and must assume all well-pled allegations as true, resolving any doubts in favor of the plaintiff. *See, e.g.*, *Murphy v. Dep't of Air Force*, 326 F.R.D. 47, 48 (D.D.C. 2018). The Select Committee's attempt to amend the subpoena by withdrawing its requests for IP address information, and other subscriber information and connection records for the other users on the Carron Drive family plan, is self-serving and does not cure the deficiencies identified in the Amended Complaint.

Defendants have not withdrawn the subpoena they issued to T-Mobile or replaced it with a new subpoena that cures these deficiencies. T-Mobile is not a party to this litigation, and in its February 28, 2022 communication to Carron Drive, the phone company indicated it would comply with the Committee's subpoena. (Am. Compl. ¶¶ 17-18.) Thus, the Committee's concessions are legally meaningless if it has not formally communicated them to T-Mobile. (Am. Compl. ¶¶ 39, 46, and 54.)

If the Select Committee were to prevail on its motion, T-Mobile likely will produce records for subscribers other than Mr. Miller and data the collection of which would violate the Fourth Amendment. If the Committee actually wants to cure its overly broad subpoena, it should be required to withdraw it and issue a new one that includes the changes it now proposes. Alternatively, T-Mobile can be added as a party to this action so that any modifications to the subpoena ordered by the Court will be properly communicated to T-Mobile.

      **B.**    **The Subpoena is Excessively Broad in Seeking Information Regarding Mr. Miller and His Family Members who are the Other Authorized Users of the Family Plan Account**

Congress has no enumerated investigations power in the Constitution. *See* U.S. Const. art. I, § 8. However, the Supreme Court has recognized that each chamber of Congress has the implied "power 'to secure needed information' in order to legislate" and thus to issue subpoenas and employ other compulsory process to obtain public and private information alike. *See Mazars*, 140 S. Ct. at 2031 (quoting *McGrain v. Daugherty*, 273 U.S. 135, 161 (1927)). This power "is as penetrating and far-reaching as the potential power to enact and appropriate under the Constitution." *Barenblatt v. United States*, 360 U.S. 109, 111 (1959). Thus, it "encompasses inquiries into," among other things, "defects in our social, economic or political system for the purpose of enabling the Congress to remedy them." *Mazars*, 140 S. Ct. at 2031 (internal quotation marks omitted).

Because this power is permitted only "as an adjunct to the legislative process," there are inherent limits to it, which courts must restrict when Congress has transgressed them. *Mazars*, 140 S. Ct. at 2031. The targets of "legislative subpoenas retain their constitutional rights throughout the course of an investigation." *See id.* at 2032, 2035. Therefore, a congressional investigation and legislative investigative act—like the congressional subpoena here—must yield when it threatens "precious constitutional freedoms." *See Watkins v. United States*, 354 U.S. 178,

204 (1957). Moreover, both the investigation and specific legislative-investigative act must have a "valid legislative purpose"—that is, it must be "related to, and in furtherance of, a legitimate task of the Congress," such as pursuing a "subject on which legislation could be had." *See Mazars*, 140 S. Ct. at 2031 (cleaned up); *see also Quinn v. United States*, 349 U.S. 155, 161 (1955) (observing the "power to investigate" does not "extend to an area in which Congress is forbidden to legislate").

Congress may not issue a subpoena "for the purpose of law enforcement." *Mazars*, 140 S. Ct. at 2032. In addition, "Congress has no general power to inquire into private affairs and compel disclosures" of persons without a valid legislative purpose to do so. *See id*.; *Quinn*, 349 U.S. at 161. Congress cannot merely "expose for the sake of exposure." *Mazars*, 140 S. Ct. 27 at 2032; *Watkins*, 354 U.S. at 187.

The subpoena to T-Mobile is overly broad because the Select Committee seeks information wholly unrelated to the January 6th riot, such as subscriber information and connection records for Mr. Miller's parents and other family members, some of whom are practicing attorneys who use their phones for privileged call and text communications with clients and to otherwise conduct their law practices. (Am. Compl. ¶ 15.) This information is not remotely useful to any legislative purpose of the Select Committee.

Defendants have proffered absolutely no information to suggest that Mr. Miller's family members influenced or motivated those who participated in the January 6th riot. Thus, the private subscriber information and connection records sought as to them are "plainly incompetent" and "irrelevant to any lawful purpose" of the Select Committee "in the discharge of [its] duties." *Senate Select Comm. on Ethics v. Packwood*, 845 F. Supp. 17, 20–21 (D.D.C. 1994) (quoting *McPhaul v. United States*, 364 U.S. 372, 381 (1960)).

The subpoena also is overbroad in that the Select Committee already has all of Mr. Miller's: (a) responsive records created in his capacity as senior advisor to former President Trump, including all records related to his White House accounts; (b) responsive records related to his work on the Trump 2020 presidential campaign, including any germane draft speeches; (c) responsive personal records and personal cell phone information, including all responsive text messages and surrounding data from his personal phone; and (d) deposition testimony concerning his activities during the time period leading up to and following the January 6th events, including his communications with others during the time period and his involvement in drafting portions of a speech delivered by Trump on January 6th.

This case is unlike other challenges to the Committee's subpoenas in that Mr. Miller has already produced all relevant information and documents. Defendants do not dispute this. Instead, they rely on months-old New York Times articles and other media sources (Defs' Mot to Dismiss at 3-4), which are outside the pleadings and have been overtaken by events (Am. Compl. ¶ 9).

To be sure, Congress has "wide boundaries" in investigating provided its investigation is sufficiently related to a legislative purpose. *See Barsky v. United States*, 167 F.2d 241, 245 (D.C. Cir. 1948). The Select Committee may investigate "what if any legislation [is] necessary or desirable" to avert a future January 6-style attack. *See Sinclair v. United States*, 279 U.S. 263, 294-95 (1929), *overruled on other grounds by United States v. Gaudin*, 515 U.S. 506 (1995). After all, the "very nature of the investigative function . . . is that it takes the searchers up some 'blind alleys' and into nonproductive enterprises." *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 509 (1975). However, the Select Committee may not issue a subpoena to expose for

exposure's sake, *see Mazars*, 140 S. Ct. at 2032 (an investigation conducted for this purpose is "indefensible"), and that appears to be the Committee's objective here.

### C.     The Subpoena Threatens the Dissipation of Constitutional Freedoms Under the First and Fourth Amendments to the Constitution

In addition to the breadth of the subpoena, which exceeds any lawfully authorized purpose of the Committee, it also violates the First and Fourth Amendments to the Constitution. With respect to the First Amendment, the Committee is improperly attempting to obtain information about Mr. Miller's free speech and association activities that are protected by the First Amendment. Worse, the Committee is misusing its authority to investigate political adversaries. Mr. Miller's cell phone and text message detail records are the modern-day equivalent of a membership list in that, in addition to disclosing information about personal communications, may provide records of calls and messaging with political affiliates whose identities would be disclosed to the prying eyes of congressional investigators known to be cooperating with the Justice Department in the largest criminal investigation in the history of the United States.

If Mr. Miller's records are disclosed, congressional investigators are going to contact every number on that list and query each subscriber as to what they were discussing with Mr. Miller—a political campaign speech writer and senior advisor to a former sitting president of the rival political party. The subpoena infringes on core First Amendment rights, and the Committee cannot demonstrate a compelling reason to justify such an intrusion. *See, e.g.*, *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958); *Gibson v. Florida Legislative Investigation Committee*, 372 U.S. 539 (1963).

When core political associational rights are at stake, courts must apply the "exacting scrutiny" standard. Exacting scrutiny requires that there be "a substantial relation between the

disclosure requirement and a sufficiently important governmental interest, and that the disclosure be narrowly tailored to the interest it promotes." *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2385 (2021). The phrase "exacting scrutiny" stems from *NAACP*, 357 U.S. at 449, which used the term "closest scrutiny" when analyzing the alleged infringement of the NAACP's rights. *Id*. at 460-61 ("state action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny").

As in *NAACP v. Alabama*, the subpoena here cannot withstand exacting scrutiny. Investigators from a rival political party seek to create a map of Mr. Miller's political contacts and use this map to expand the investigation of a partisan congressional committee's political opponents. This is no different than what Alabama sought to do in *NAACP v. Alabama* back in 1958, and what California sought to do in *Americans for Prosperity Found. v. Bonta* with large donors in 2021. In *NAACP v. Alabama*, NAACP members had espoused a civil rights agenda that was at odds with the interests of the Jim Crow regime then in power in Alabama. Alabama wanted to know who was involved to "chill" (if not do worse) those activities. Similarly, in *Americans for Prosperity Found. v. Bonta*, the Americans for Prosperity organization was supporting a certain political agenda; California wanted to know its donors. The Supreme Court ruled in both cases to protect the associational rights because disclosure of members, identities, and contact information will chill participation in partisan or perceived unpopular political activities.

This case also strongly resembles the circumstances present in the civil action styled *Republican Nat'l Comm. v. Pelosi*, bearing Case Number 22-cv-659 before District Judge Kelly of this district court. *Republican Nat'l Comm. v. Pelosi*, 2022 WL 1294509 (D.D.C. May 1, 2022), *vacated* 2022 WL 4349778 (D.C. Cir. Sept. 16, 2022). There, recognizing the "political

realities" of the situation and a subpoena that would reveal the identities of political affiliates, *id.* at *20, the district judge found that the RNC stated a valid First Amendment claim, *id*. Though the district judge concluded the RNC subpoena was sufficiently narrowly tailored to the committee's interest, the D.C. Circuit granted an emergency motion for injunction pending appeal of that decision, after which the Select Committee withdrew the RNC subpoena. *See* 2022 WL 4349778.

It is not speculation to conclude that partisan activists who are contacted by congressional or federal investigators about their political activities will think twice about participating in political activities in the future. That is the unconstitutional chill at issue in this case. The Select Committee knows who Mr. Miller is and what he did. Its purpose in issuing a subpoena to his cell phone provider is to rifle through his political contacts and thereby chill those affiliations and associations.

Having established a valid First Amendment right that is implicated in this case, courts are to "balance the burdens imposed on individuals and associations against the significance of the government interest in disclosure." *AFL-CIO v. FEC*, 333 F.3d 168, 176 (D.C. Cir. 2003). In weighing these interests, the records demanded by a subpoena must be "reasonably relevant" to the investigation." *See McPhaul*, 364 U.S. at 381-82. Related to that, the investigative demand should not be "substantially" overbroad by seeking information that "does not serve to advance" the investigative "goals." *See Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989). Moreover, the subpoena must not cause an "unnecessary and unreasonable dissipation of precious constitutional freedoms." *See Watkins v. United States*, 354 U.S. 178, 204 (1957). Such an unnecessary burden is imposed when, for example, there are "multiple alternative mechanisms" for obtaining the information without imposing the burden. *Bonta*, 141 S. Ct. at

2385-87. The Select Committee may have a "uniquely weighty" and "vital interest in studying the January 6th attack." *See Trump v. Thompson*, 20 F.4th 10, 17 (D.C. Cir. 2021). But that interest has been satisfied for a particular witness when the witness has produced all responsive information, as is the case here—a quintessential example of the "alternative mechanism" a court must consider in evaluating a congressional subpoena.

The Fourth Amendment prohibits unreasonable searches and seizures. *See McPhaul*, 364 U.S. 372 (recognizing Fourth Amendment challenges to legislative subpoenas). Under modern jurisprudence, a search takes place when the government intrudes on a person's reasonable expectation of privacy, and a warrantless search is presumptively unreasonable unless it falls within an established exception to the warrant requirement. To obtain a warrant, the government must show probable cause to a neutral magistrate. *Carpenter v. United States*, 138 S. Ct. 2206, 2221 (2018) (the "fact that the government obtained the information from a third party [wireless carrier] does not overcome [a] claim to Fourth Amendment protection" over cell-site location information).

The subpoena to T-Mobile seeks IP address information that could disclose Mr. Miller's near exact location with the use of readily available geolocation tools. (Am. Compl. ¶ 53.) There is no need for this information other than to serve an impermissible law-enforcement purpose, and Congress may not issue a subpoena "for the purpose of law enforcement." *Mazars*, 140 S. Ct. at 2032. Even if this Court were to find otherwise, Mr. Miller has a reasonable expectation of privacy in his location information, and the Select Committee's demand for that information—masquerading as IP address records—is a "search" under the Fourth Amendment that can only be obtained with a judicially approved warrant. No such warrant exists here.

### D.    The Subpoena Violates the Stored Communications Act

Finally, the subpoena fails because it violates the Stored Communications Act ("SCA"), 18 U.S.C. § 2701 et seq. The SCA prohibits an electronic service provider like T-Mobile from knowingly divulging "a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications [ ]) to any governmental entity." 18 U.S.C. § 2702(a)(3). The law provides an exception for the disclosure of non-content customer records under certain conditions, including where a "governmental entity" obtains a judicial warrant or "an administrative subpoena authorized by a Federal or State statute or a Federal or State grand jury or trial subpoena[.]" 18 U.S.C. §§ 2702(c)(1), 2703(c). The statute defines the term "governmental entity" as "a department or agency of the United States or any State or political subdivision thereof." 18 U.S.C. § 2711(4). This definition does not include Congress.

The Select Committee contends the statutory exception of 18 U.S.C. § 2702(c)(6) applies to the T-Mobile subpoena. However, the Select Committee cannot obtain the subpoenaed records under this section because Congress addressed the needs of private parties (*i.e.*, "any person other than a governmental entity") and permitted the disclosure of non-content customer records in situations where there is consent from a person whose privacy rights are at stake. In the absence of consent, Congress limited private parties to access non-content customer records in situations where the provider wishes to do so *voluntarily*. Through its subpoena, the Committee seeks to *compel* production. But under the SCA, only "a governmental entity" can compel disclosure. The Committee therefore cannot rely on the exception of § 2702(c)(6).

## V.   CONCLUSION

For all of these reasons, Plaintiffs respectfully request that this Court enter an order denying Defendants' motion to dismiss in its entirety, granting such other and further relief the Court deems just and proper.

17

Dated: October 14, 2022

Respectfully submitted,

/s/Robert N. Driscoll
**MCGLINCHEY STAFFORD PLLC**
Robert N. Driscoll (DC Bar #486451)
1275 Pennsylvania Avenue NW, Suite 420
Washington, DC 20004
Tel: (202) 802-9950
Fax: (202) 318-1084
rdriscoll@mcglinchey.com

**JPROWLEY LAW PLLC**
John P. Rowley III (DC Bar #392629)
1701 Pennsylvania Avenue NW, Suite 200
Washington, DC 20006
Tel: (202) 525-6674
john.rowley@jprowleylaw.com

**E&W LAW, LLC**
John S. Irving (DC Bar #460068)
1455 Pennsylvania Avenue NW, Suite 400
Washington, DC 20004
Tel: (301) 807-5670
john.irving@earthandwatergroup.com

*Counsel for Plaintiffs Carron Drive Apartments LP
and Stephen Miller*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was electronically filed in this case with the

clerk of the court and served on this 14th day of October, 2022 through the Court's CM/ECF

system, which will send notification of this filing to all counsel of record.

/s/Robert N. Driscoll
Robert N. Driscoll
MCGLINCHEY STAFFORD PLLC

*Counsel for Plaintiffs Carron Drive Apartments LP
and Stephen Miller*

18