**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CARRON DRIVE APARTMENTS LP<br><br>and<br><br>STEPHEN MILLER,<br><br>                         *Plaintiffs*,<br><br>     v.<br><br>UNITED STATES HOUSE OF<br>REPRESENTATIVES SELECT COMMITTEE<br>TO INVESTIGATE THE JANUARY 6TH<br>ATTACK ON THE UNITED STATES<br>CAPITOL<br><br>and<br><br>BENNIE G. THOMPSON,<br><br>                     *Defendants*. | No. 1:22-cv-00641-CJN |

**CONGRESSIONAL DEFENDANTS' REPLY**
**IN SUPPORT OF THEIR MOTION TO DISMISS**

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515

ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave, NW
Washington, D.C. 20001

SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2600

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 1

      I.     The Court Should Credit the Select Committee's Narrowing of the
           Subpoena ........................................................................................................ 1

      II.    The Subpoena Is Not Overly Broad ............................................................ 2

      III.   The Subpoena Does Not Violate the First Amendment ............................ 3

      IV.   The Subpoena Does Not Violate the Fourth Amendment ........................ 7

      V.    The Stored Communications Act Does Not Limit the Select Committee's
           Authority to Obtain Non-Content Information from Verizon Pursuant to a
           Lawful Subpoena ......................................................................................... 7

CONCLUSION ................................................................................................................... 8

# TABLE OF AUTHORITIES

## Cases

*Ams. for Prosperity Found. v. Bonta*,
    141 S. Ct. 2373 (2021) ................................................................................................5

*Brock v. Loc. 375, Plumbers Int'l Union of Am., AFL-CIO*,
    860 F.2d 346 (9th Cir. 1988) ......................................................................................3

*Buckley v. Valeo*,
    424 U.S. 1 (1976) ....................................................................................................3, 5

*BuzzFeed, Inc. v. U.S. Dep't of Just.*,
    318 F. Supp. 3d 347 (D.D.C. 2018) ..........................................................................1

*Carpenter v. United States*,
    138 S. Ct. 2206 (2018) ...............................................................................................7

*Coleman v. Pension Benefit Guar. Corp.*,
    94 F. Supp. 2d 18 (D.D.C. 2000) ...............................................................................4

*Eastman v. Thompson*,
    2022 WL 1407965 (C.D. Cal. Jan. 25, 2022) ............................................................4

*Exxon Corp. v. FTC*,
    589 F.2d 582 (D.C. Cir. 1978) ...................................................................................5

*McPhaul v. United States*,
    364 U.S. 372 (1960) ................................................................................................1, 7

*NAACP v. Alabama*,
    357 U.S. 449 (1958) ....................................................................................................5

*Republican Nat'l Comm. ("RNC") v. Pelosi*,
    --- F. Supp. 3d ---, 2022 WL 1294509 (D.D.C. May 1, 2022) ..................................6
    2022 WL 1604670 (D.D.C. May 20, 2022)................................................................6
    No. 22-5123 (D.C. Cir. May 25, 2022)......................................................................6
    No. 22-5123 (D.C. Cir. Sept. 16, 2022) ....................................................................6

*Resol. Trust Corp. v. Thornton*,
    41 F.3d 1539 (D.C. Cir. 1994)....................................................................................1

*SEC v. R.J. Reynolds Tobacco Holding, Inc.*,
    2004 WL 3168281 (D.D.C. June 29, 2004).................................................................1

*Statewide Bonding, Inc. v. U.S. Dep't of Homeland Sec.*,
    980 F.3d 109 (D.C. Cir. 2020)............................................................4, 8

*Trump v. Mazars USA, LLP*,
    39 F.4th 774 (D.C. Cir. 2022).................................................................1

*United States v. AT & T, Inc.*,
    2011 WL 5347178 (D.D.C. Nov. 6, 2011) ...............................................1

*Ward v. Thompson*,
    No. 22-cv-08015 (D. Ariz. Sept. 22, 2022) ............................................4

*Warth v. Seldin*,
    422 U.S. 490 (1975) ..............................................................................4

**Statutes**

18 U.S.C. § 2701 *et seq.*...............................................................................7

18 U.S.C. § 2702 .........................................................................................8

## INTRODUCTION

In Mr. Miller's opposition to Congressional Defendants' motion to dismiss, he insists that, by having cooperated with some aspects of the Select Committee's investigation, he is entitled to impede other parts. That is not the law—a witness cannot dictate the scope of a Congressional committee's investigative efforts. As discussed in our opening brief, *see* Cong. Defs.' Mem. in Supp. of Mot. to Dismiss ("Mem.") at 3-4, ECF 16, Mr. Miller—who authored many of the words that President Trump spoke on January 6th—played a key role in President Trump's efforts to overturn the election. None of his other arguments hold water. Accordingly, his Amended Complaint should be dismissed.

## ARGUMENT

### I.     The Court Should Credit the Select Committee's Narrowing of the Subpoena

Mr. Miller insists that it is improper and "self-serving," Pl.'s Mem. in Opp'n to Cong. Defs.' Mot. to Dismiss ("Opp.") at 9, ECF 19, for the Court to credit the Select Committee's withdrawal of certain requests in response to his Amended Complaint. It is not. In ordinary civil litigation, courts routinely credit subpoena negotiations. *See, e.g.*, *BuzzFeed, Inc. v. U.S. Dep't of Just.*, 318 F. Supp. 3d 347, 359, 364 (D.D.C. 2018); *United States v. AT & T, Inc.*, No. 1:11-cv-01560, 2011 WL 5347178, at *7 (D.D.C. Nov. 6, 2011); *SEC v. R.J. Reynolds Tobacco Holding, Inc.*, No. MISC.A.03-1651, 2004 WL 3168281, at *2 (D.D.C. June 29, 2004); *Resol. Trust Corp. v. Thornton*, 41 F.3d 1539, 1543 n.3 (D.C. Cir. 1994). Indeed, the Supreme Court has specifically required recipients of legislative subpoenas to work with Congress so that disputes could be remedied without judicial involvement. *See, e.g.*, *McPhaul v. United States*, 364 U.S. 372, 382 (1960). Mr. Miller would like to delay this litigation by requiring the Select Committee to issue a new subpoena and start from scratch. The law requires no such thing. *Cf. Trump v. Mazars USA, LLP*, 39 F.4th 774, 807 (D.C. Cir. 2022) (upholding district court's

narrowing of Congressional subpoena and rejecting argument that instead Congress must fashion a new one).

In his complaint, Mr. Miller alleged that "the Internet Protocol ('IP') address information sought by the Subpoena might alone disclose Mr. Miller's location information when he connected to various Wi-Fi networks." Am. Compl. ¶ 53. In his opposition to the Select Committee's motion to dismiss, Mr. Miller further notes that the subpoena asks for "[a]ll authorized users on the associated account" and "[a]ll phone numbers associated with the account." Opp. at 3 n.1. The Select Committee has withdrawn both of those requests. *See* Mem. at 5, 11 (withdrawing request for IP address information); *see also id.* at 8 (noting that "the Select Committee has no interest in records relating to phone numbers that do not pertain to him."). The Select Committee has also communicated its withdrawal of these requests to T-Mobile. *See* E-Mail from Sean Tonolli, Select Committee Senior Investigative Counsel, to Alyssa DaCunha, Counsel to T-Mobile (Oct. 21, 2022) (attached as Ex. A).

## II.     The Subpoena Is Not Overly Broad

Mr. Miller claims that the subpoena is overly broad for two reasons. First, he alleges, it seeks "subscriber information and connection records for Mr. Miller's parents and other family members." Opp. at 11; *see also id.* at 3. As noted above, the Select Committee has withdrawn its request for subscriber information regarding Mr. Miller's family members. His allegation that the subpoena includes his family's connection records—essentially logs of phone calls and text messages—is simply incorrect: the subpoena seeks connections records relating only to the phone numbers specifically listed in Section B of the subpoena.

Second, Mr. Miller argues that the subpoena is overbroad because, he alleges, he has "already produced all relevant information and documents." Opp. at 12. That is not how investigations work. Mr. Miller does not and cannot provide any reason why the Select

2

Committee must take him or any other witness at their word.  As we stated in our opening brief, the Select Committee cannot assess the adequacy, accuracy, or completeness of the search of Mr. Miller's phone and his retrieval and provision of his records.  *See* Mem. at 2.  Nor does the Select Committee know whether, at the time of his search, his phone still contained all relevant records.  *See id.*

In response, Mr. Miller insists that "[s]uch an argument would apply to virtually *everyone* who appears before Congress and renders the 'legislative purpose' requirement a nullity."  Opp. at 2 (emphasis in original).  Not so.  The Select Committee has a valid legislative need to gain a comprehensive understanding of Mr. Miller's activities in aiding President Trump's attempt to overturn the 2020 Presidential election.  That purpose is not vitiated because Mr. Miller already provided certain documents to the Select Committee.

### III.    The Subpoena Does Not Violate the First Amendment

Mr. Miller claims—in language identical to his Amended Complaint—that the Select Committee is "improperly attempting to obtain information about Mr. Miller's free speech and association activities that are protected by the First Amendment."  Opp. at 13; Am. Compl. ¶ 49.

But this does not state a legally valid claim.  *See Buckley v. Valeo*, 424 U.S. 1, 74 (1976) (reiterating that an associational injury requires demonstrating a "reasonable probability that the compelled disclosure . . . will subject them to threats, harassment, or reprisals from either Government officials or private parties"); *Brock v. Loc. 375, Plumbers Int'l Union of Am., AFL-CIO*, 860 F.2d 346, 350 n.1 (9th Cir. 1988) (reviewing case law and noting that courts have "emphasized in each of those decisions . . . the need for objective and articulable facts, which go beyond broad allegations or subjective fears . . . . [A] merely subjective fear of future reprisals is an insufficient showing of infringement of associational rights.").  For this reason, the only court

that has adjudicated a First Amendment associational challenge to a Select Committee subpoena

seeking call detail records rejected it.  *See* Order at 12-14, *Ward v. Thompson*, No. 22-cv-08015

(D. Ariz. Sept. 22, 2022), ECF 55, *appeal pending*, No. 22-16473 (9th Cir.).  Similarly, a district

court has rejected an associational First Amendment claim by John Eastman, who was

attempting to quash a Select Committee subpoena to his former employer, Chapman University,

seeking his emails from a specified time range.  *See Eastman v. Thompson*, No. 22-cv-99, 2022

WL 1407965, at *8 (C.D. Cal. Jan. 25, 2022).

 Mr. Miller now suggests for the first time that his First Amendment claim relates to the

concern that persons with whom he was in contact via phone or text message might experience

"chill" if T-Mobile complies with the subpoena.  This formulation of the claim too fails, for

numerous reasons.

 *First*, Mr. Miller did not plead such a First Amendment claim in the very brief First

Amendment section of his Amended Complaint, *see* ¶¶ 49-51, and it is too late to do so now.

*See, e.g.*, *Statewide Bonding, Inc. v. U.S. Dep't of Homeland Sec.*, 980 F.3d 109, 117 n.5 (D.C.

Cir. 2020) ("[I]t 'is axiomatic that a complaint may not be amended by the briefs in opposition to

a motion to dismiss.'" (quoting *Coleman v. Pension Benefit Guar. Corp.*, 94 F. Supp. 2d 18, 24

n.8 (D.D.C. 2000))).

 *Second*, Mr. Miller lacks standing to raise the rights of others.  A "plaintiff generally

must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights

or interests of third parties."  *Warth v. Seldin*, 422 U.S. 490, 499 (1975).  An exception to this

rule has been recognized in cases involving associations asserting the First Amendment interests

of their members or donors.  *See id.* at 511 ("[I]n attempting to secure relief from injury to itself

the association may assert the rights of its members, at least so long as the challenged infractions adversely affect its members' associational ties."). But Mr. Miller is not an association.

*Third*, with regard to information received via subpoena, "courts must presume that the committees of Congress will exercise their powers responsibly and with due regard for the rights of affected parties." *Exxon Corp. v. FTC*, 589 F.2d 582, 589 (D.C. Cir. 1978).

*Finally*, despite Mr. Miller's insistence to the contrary, this claim is no less speculative than his claim that his own associational rights would be abridged. *See Buckley*, 424 U.S. at 74.

Even if Mr. Miller had advanced a cognizable First Amendment interest, his claim would lose under any applicable balancing test, as set forth in our opening brief. *See* Mem. at 8. The public interest in a full investigation of the events of and leading up to January 6th outweighs any incidental First Amendment burden created by compliance with the subpoena in question— which, unlike the subpoena upheld against a First Amendment challenge in *Eastman*, seeks no communications content.

Mr. Miller's claim that the Select Committee's interests are somehow attenuated because Mr. Miller purported to disclose certain records is unconvincing. If Mr. Miller's argument were right, then any person could inoculate himself from Congressional scrutiny by proffering a self-selected set of records and then claiming that Congress has no right to look into the completeness of his production.

Indeed, the fact that Mr. Miller is an individual, not an organization, renders inapposite his proposed "exacting scrutiny" test. *See* Opp. at 13-14 (citing *NAACP v. Alabama*, 357 U.S. 449, 460-67 (1958) and *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2385 (2021)). Regardless, this subpoena meets that standard: it is narrowly tailored in that it seeks only one

person's call detail records over the limited period in which he played a key role helping President Trump attempt to overturn a Presidential election.

Mr. Miller's comparison of this case to *Republican National Committee ("RNC") v. Pelosi*, in which a political party sued to enjoin one of its vendors from complying with a Select Committee subpoena, is fundamentally misplaced. In that case, the RNC failed in its effort to obtain both a preliminary injunction stopping compliance with the subpoena and an injunction pending appeal from the district court, before ultimately convincing the court of appeals to grant an injunction pending appeal. *See RNC*, --- F. Supp. 3d ---, 2022 WL 1294509 (D.D.C. May 1, 2022), *appeal dismissed as moot and judgment vacated*, No. 22-5123, 2022 WL 4349778 (D.C. Cir. Sept. 16, 2022) (per curiam); *RNC*, No. 22-cv-659, 2022 WL 1604670 (D.D.C. May 20, 2022); Order, *RNC*, No. 22-5123 (D.C. Cir. May 25, 2022). Even though both cases involved, *inter alia*, First Amendment challenges, there are vast differences between the two cases.

*First*, as discussed above, *RNC* involved an organization, not an individual.

*Second*, the records sought in *RNC* differ significantly from the call detail records sought here—which include only limited, non-content connection information such as when a call was made or when a text message was sent, its duration (if a call), and which phone numbers were involved. By contrast, the subpoena at issue in *RNC* sought a variety of data regarding the performance of the RNC's email campaigns, as well as communications between the RNC and its email vendor and the vendor's internal documents and communications regarding the RNC's email campaigns. *See RNC*, 2022 WL 1294509, at *3. Obviously, Congressional Defendants agree with the district court's holding in *RNC* that the subpoena was consistent with the First Amendment. But even assuming *arguendo* that it was not, there would be no basis to extend

such logic to a request for mere call detail records, which neither reveal communications content nor provide data regarding the effectiveness of a political party's messaging.

*Third*, Mr. Miller has made no effort to articulate any cognizable First Amendment harm that would befall him upon T-Mobile's subpoena compliance. The RNC, for example, submitted declarations purporting to articulate First Amendment harm that it claimed it would experience following compliance. *See* Decl. of Christian Schaeffer in Supp. of Pl.'s Mot. for Prelim. Inj., *RNC*, No. 22-cv-659 (D.D.C. Mar. 15, 2022), ECF 8-2; Suppl. Decl. of Christian Schaeffer in Supp. of Pl.'s Mot. for Prelim. Inj., *RNC*, No. 22-cv-659 (D.D.C. Mar. 29, 2022), ECF 21-1. Mr. Miller, by contrast, has not done so, nor has he articulated any non-speculative theory of harm in his Amended Complaint. This failure is fatal to his claim.

## IV.    The Subpoena Does Not Violate the Fourth Amendment

As explained in our opening brief, a Congressional subpoena is not impermissibly overbroad under the Fourth Amendment if its call for documents or testimony is within the scope of the Congressional inquiry at issue. *See* Mem. at 10 (citing *McPhaul*, 364 U.S. at 382). Mr. Miller ignores this—and also ignores our lengthy explanation of why *Carpenter v. United States*, 138 S. Ct. 2206 (2018), does not apply. *See* Mem. at 10-12. Mr. Miller reiterates the assertion made in his complaint that "[t]he subpoena to T-Mobile seeks IP address information that could disclose Mr. Miller's near exact location with the use of readily available geolocation tools." Opp. at 16. But as noted above, *see supra* at 2, the Select Committee withdrew its request for IP address information. *See* Mem. at 5, 11.

## V.    The Stored Communications Act Does Not Limit the Select Committee's Authority to Obtain Non-Content Information from Verizon Pursuant to a Lawful Subpoena

Mr. Miller agrees (Opp. 17) with Congressional Defendants (Mem. 13-15) that the definition of "governmental entity" in the Stored Communications Act, 18 U.S.C. § 2701 *et seq.*,

does not include Congress.  And he does not have a convincing response to our point that the Act permits disclosure to "any person other than a governmental entity," 18 U.S.C. § 2702(c)(6), and thus—because Congress is excluded from the definition of "governmental entity"—permits disclosure to Congress.  He argues that, "[i]n the absence of consent [by the customer]," Congress may obtain non-content customer records only "in situations where the provider wishes to do so *voluntarily*."  Opp. at 17.  But that argument makes no sense.  If T-Mobile is allowed to disclose records to Congress voluntarily, then *a fortiori* it may do so in response to a Congressional subpoena.[1]

## CONCLUSION

For the reasons stated above and in our opening brief, this Court should dismiss the Complaint in its entirety.

Respectfully submitted,

/s/ *Douglas N. Letter*
DOUGLAS N. LETTER
  *General Counsel*
TODD B. TATELMAN
  *Principal Deputy General Counsel*
ERIC R. COLUMBUS
  *Special Litigation Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C.  20515
(202) 225-9700
Douglas.Letter@mail.house.gov

---

[1]  While insisting that he "do[es] not ask this Court to revisit whether the Select Committee was properly formed," Mr. Miller notes in a footnote that he "contends—and preserves for the record and if necessary any subsequent appeal—that the Select Committee is not duly constituted because it has only nine members and no member recommended by Minority Leader McCarthy."  Opp. at 4 & n.2.  Mr. Miller did not raise this claim in his Amended Complaint.  Accordingly, it is waived.  *See, e.g.*, *Statewide Bonding*, 980 F.3d at 117 n.5.

8

John A. Freedman[*]
Paul Fishman[*]
Amy Jeffress[*]
David J. Weiner[*]
John M. Hindley[*]
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave, NW
Washington, D.C. 20001
(202) 942-5000
John.Freedman@arnoldporter.com
Paul.Fishman@arnoldporter.com
Amy.Jeffress@arnoldporter.com
David.Weiner@arnoldporter.com
John.Hindley@arnoldporter.com

SHER TREMONTE LLP
Justin M. Sher[*]
Michael Tremonte[*]
Noam Biale[*]
Maya Brodziak[*]
Kathryn E. Ghotbi[*]
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2600
JSher@shertremonte.com
MTremonte@shertremonte.com
NBiale@shertremonte.com
MBrodziak@shertremonte.com
KGhotbi@shertremonte.com

Dated: October 21, 2022

* Appearing pursuant to 2 U.S.C. § 5571(a).

9

**CERTIFICATE OF SERVICE**

I hereby certify that on October 21, 2022, I caused the foregoing document to be filed via the CM/ECF system for the U.S. District Court for the District of Columbia, which I understand caused a copy to be served on all registered parties.

_/s/ Douglas N. Letter_
Douglas N. Letter